## UNITED ZINC & CHEMICAL CO. v. BRITT et ux. *

### (Circuit Court of Appeals, Eighth Circuit. April 13, 1920.)

### No. 5430.

1. **Negligence ⚬⟹39—Poisonous pool attraction to children.**
   Where the inclosure around a tract of land formerly used for manufacturing purposes had fallen away, so that the public were free to go at will and had made footpaths across it, if a pool of water impregnated with poisonous chemicals was attractive to boyish instincts and impulses as a place to go in bathing, and boys yielding to such impulses were killed by the poisons, it was immaterial whether the boys saw or could see the pool before they entered upon the tract.

2. **Negligence ⚬⟹37—Consent to use of grounds by public imputable to owner.**
   Where a manufacturing plant had been abandoned and dismantled, and the inclosure had fallen away, so that the public crossed the premises at will, and made footpaths across it, the law imputed knowledge and consent to such use to the owner.

3. **Negligence ⚬⟹136(19)—Liability for death of boys in unguarded poisonous pool of water question for the jury.**
   Where a plant used for the manufacture of sulphuric acid and zinc spelter was abandoned and dismantled, and a pool of water collected in an open basement and became impregnated with poisonous chemicals, and, the inclosure having fallen away, the public crossed the premises at will, so that they had made footpaths across it, and boys who responded to boyish impulses and went in bathing were killed by the poisonous chemicals, the owner's liability was properly submitted to the jury.

4. **Judgment ⚬⟹326—Record properly corrected nunc pro tunc to conform to verdict.**
   Where the jury rendered a verdict for plaintiffs, but an inexperienced deputy clerk, without order from the court, and contrary to the practice to enter judgment in accordance with the verdict, entered on the record a judgment dismissing defendant on payment of costs, the record was properly corrected nunc pro tunc at a subsequent term, by inserting the amount of the verdict and striking out the discharge of defendant.

In Error to the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Action by Van Britt and wife against the United Zinc & Chemical Company. Judgment for plaintiffs, and defendant brings error. Affirmed.

See, also, 257 Fed. 991, 168 C. C. A. 669.

Henry D. Ashley, of Kansas City, Mo. (William S. Gilbert, of Kansas City, Mo., on the brief), for plaintiff in error.

F. J. Oyler, of Iola, Kan. (Fred Robertson, of Kansas City, Kan., on the brief), for defendants in error.

Before HOOK and STONE, Circuit Judges, and LEWIS, District Judge.

⚬⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Rehearing denied August 2, 1920.

LEWIS, District Judge. The defendants in error, Van and Susie Britt, residents and citizens of Missouri, who were plaintiffs below, recovered a judgment against plaintiff in error for their damages on account of the deaths of their two sons Edward and Allen, eight and eleven years old, which occurred in July, 1916. Plaintiff in error owned and operated, at Iola, Kansas, a plant at which it manufactured sulphuric acid and zinc spelter. It owned and still owns the tract (about 20 acres) in the outskirts of the town on which the buildings were situated, but in 1910 it tore them down, moved the wreckage and machinery away, and since then has not occupied or used the land for any purpose. There was an enclosure around the tract, but when operations ceased and the plant was dismantled it fell away, so that those passing were free to go at will, and made foot-paths across it. There was a basement containing acid tanks with lead pipes in and out under what was known as the tower building, and when it was torn down chemical refuse was thrown in the open basement. As the tanks and pipes were taken out some sulphuric acid got into the basement. Other chemical refuse was left about on the surface, and the old basement later became a pool of clear water from surface drainage, strongly impregnated with sulphuric acid and zinc sulphate. In July, 1916, Van and Susie Britt, traveling overland with their sons Edward and Allen, camped for a few days not far from the pool. The boys, in passing it one afternoon, responded to boyish impulses and went in bathing. In a short time after going in the younger was dead in the pool, the older was taken out, removed to a hospital and died two days later "from swelling of the bronchial tubes and gastrointestinal irritation; irritation of the stomach and bowels, which produced an inflammation of the bowels and stomach." He had colicky pains, vomiting and gasping for breath. Expert testimony attributed both deaths to the poisonous chemicals in the water which had been taken internally. The water, when so taken, caused an immediate burning in the throat and choking; and applied outwardly it caused an itching and slight sense of burning.

The complaint was bottomed upon a local statute giving a right to recovery "when the death of one is caused by the wrongful act or omission of another." It charged that defendant carelessly and negligently left the pool of poisonous water open and exposed, and without enclosure, barrier, danger signals or warnings of any kind about it, well knowing, or by the exercise of reasonable care should have known, its dangerous character; that it maintained the poisonous pool and failed to fill it up.

The answer, after admitting ownership of the land in defendant, operation of its plant thereon from 1902 to September, 1910, the tearing down and removal of the buildings and machinery in the latter month, denied all other allegations.

At the close of the evidence the court refused to instruct a verdict for the defendant and submitted the case; instructing the jury that defendant had a right to maintain a pond of water on its premises, that if the water in the pool had not been poisonous but had been

pure water and the children had gone into it in that condition and been drowned .plaintiffs could not recover; that, on the other hand, if the pool was attractive to boyish instinct and impulses as a place to go in bathing, and yielding they went in thus allured and their deaths resulted from the poison in the water, then the jury might find for plaintiffs; that it was immaterial whether they saw or could see the pool before they entered upon the tract; that if they had been of mature years they would have been trespassers and subject to a different rule, but that the law does not hold children of immature years to the same accountability as trespassers as it does adult persons.

[1, 2] There are many assignments of error, chiefly as to instructions given and refusal to give others, but they all come back to the contention, pressed on argument and developed in brief, of non-liability; and it may be conceded that there is good ground for debate, as the elaborate and able brief for plaintiff in error demonstrates. There is conflict in the cases as to the extent and under what conditions the principle sic utere tuo, etc., may be carried against a landowner as a basis for liability on account of injuries to children resulting from dangerous attractions which he places upon or suffers to continue on his premises. There is less hesitation in its application against him where the thing complained of is, as here, put to no useful, ornamental or other purpose of enjoyment. It is also urged as error that the weight of the evidence disclosed that the pool could not have been seen by one off the premises standing in the nearest highway, or on the boundary line, or in the paths, and that the court told the jury that it was immaterial whether the boys saw it before they went upon the tract or after they were on it. In this the court doubtless had in mind two things, first, the undisputed fact that the public passed over it at will, so much so as to beat foot-paths across it, the further fact of its nearness to the homes of families, and second, the principle of law applied in cases like this that children of tender years are not classed with idlers, licensees or trespassers. 2 Shearman & Redfield on Negligence, § 705. In Pekin v. McMahon, 154 Ill. 141, 39 N. E. 484, 27 L. R. A. 206, 45 Am. St. Rep. 114, it is said:

"Although a child of tender years, who meets with an injury upon the premises of a private owner, may be a technical trespasser, yet the owner may be liable, if the things causing the injury have been left exposed and unguarded, and are of such a character as to be an attraction to the child, appealing to its childish curiosity and instincts. Unguarded premises, which are thus supplied with dangerous attractions, are regarded as holding out implied invitations to such children."

It is further urged that there is lack of proof of knowledge on the part of the owner that the tract was being used or visited by the public or by children, and that if the evidence shows such user or visitations they were wholly without invitation or consent; but on the facts adduced the law imputes both knowledge and consent. In N. P. Ry. Co. v. Curtz, 196 Fed. 367, 116 C. C. A. 403, it is said:

"The occupant or owner of premises who invites, either expressly or impliedly, others to come upon them, owes to them the duty of using reasonable and

ordinary diligence to the end that they be not necessarily or unreasonably exposed to danger; and an implied invitation to another to enter upon or occupy premises arises from the conduct of the parties, and from the owner's knowledge, actual or imputed, that the general use of his premises has given rise to the belief on the part of the users thereof that he consents thereto."

[3] In short, an examination of the authorities, both State and Federal, fails to convince that the court erred in submitting the case or in the instructions given and refused. We think this conclusion is sustained by the opinion of the Supreme Court in Railway Co. v. McDonald, 152 U. S. 262, 14 Sup. Ct. 619, 38 L. Ed. 434, and by Railway Co. v. Curtz, supra; Lumber Co. v. Thompson, 215 Fed. 8, 131 C. C. A. 316, L. R. A. 1915A, 731; Chesko v. Delaware & Hudson Co., 218 Fed. 804, 134 C. C. A. 492; Snare & Triest Co. v. Friedman, 169 Fed. 1, 94 C. C. A. 369, 40 L. R. A. (N. S.) 367; also by the Supreme Court of Kansas in Roman v. Leavenworth, 90 Kan. 379, 133 Pac. 551, Id., 95 Kan. 513, 148 Pac. 746; Kansas City v. Siese, 71 Kan. 283, 80 Pac. 626; Light & Power Co. v. Healy, 65 Kan. 798, 70 Pac. 884. Many like cases from other states could be cited.

[4] The trial was concluded on May 10, 1918, and this was the verdict brought in and then entered of record:

"We, the jury in the above entitled case, duly impaneled and sworn, upon our oaths find for the plaintiff, and assess his damages at $5,000.

"C. O. Bollinger, Foreman."

Unless a stay order was made on return of verdict it was and for many years had been the practice to enter judgment in accordance with the verdict. No other or different judgment could be entered lawfully. That was the last day of the term, and after adjournment a new and inexperienced deputy clerk wrote this into the record:

"Now, on this 10th day of May, 1918, this cause came on for further hearing and it is by the court ordered and adjudged that the said defendant, the United Zinc and Chemical Company, pay the costs of this action taxed in the sum of $———, and accruing costs, and go hence without day."

The court did not order the entry of what the deputy clerk wrote up. It was without right to make any such order on the record of the case as it stood at that time. The mistake was not discovered until the case came on for argument here on a prior writ, when attention was called to the fact by one of the Judges of this Court, and there was dismissal. At the next term below (May, 1919), the Britts moved that appropriate judgment be entered on the verdict nunc pro tunc, which was done. That action is assigned as error.

In Lincoln National Bank v. Perry, 66 Fed. 887, 14 C. C. A. 273, judgment was in favor of the five named defendants in an action at law. The writ was sued out against only two of them, and when the cause came here there was a motion to dismiss for non-joinder. The plaintiff then went back to the trial court and succeeded in having the judgment corrected nunc pro tunc by eliminating therefrom three of the defendants named in it, on a showing that two of them had not been served with process, that the other did not appear and participate in the trial, and that there was no issue between the three and the plain-

tiff. The corrected judgment was certified, and when the motion for dismissal for non-joinder came on again this court said:

"We are not prepared to admit that the Circuit Court exceeded its power, in undertaking to amend its record in the manner aforesaid, if it was satisfied that through accident or inadvertence, or a misprision of the clerk, the record did not in fact speak the truth. * * * It seems, also, that the power to thus correct mistakes in the record may be exercised within any reasonable period, even after the lapse of the term at which the mistake was committed. * * * The record was false in point of fact, and the Circuit Court so found, in that it recited that Lane, Kent, and Kelley had appeared and defended the suit, and that the court had actually rendered a judgment in their favor, whereas Lane and Kent had not even been served with process, and the court had not tried any issue, as between the plaintiff bank and either of said three defendants, and had not rendered a judgment in favor of either of them. The judgment actually spread of record was the act of the clerk, and in no sense the act of the court."

The nunc pro tunc order operated as an amendment of the record by inserting the amount of the verdict to be recovered and striking out the discharge of the defendant. In Hickman v. Fort Scott, 141 U. S. 415, 12 Sup. Ct. 9, 35 L. Ed. 775, it is said to be the rule "that a court, after the expiration of the term, may, by an order nunc pro tunc, amend the record by inserting what had been omitted by the act of the clerk or of the court." See also In re Wight, 134 U. S. 136, 10 Sup. Ct. 487, 33 L. Ed. 865; Bernard v. Abel, 156 Fed. 649, 84 C. C. A. 361; Odell v. Reynolds, 70 Fed. 656, 17 C. C. A. 317; Phillips v. Negley, 117 U. S. 665, 6 Sup. Ct. 901, 29 L. Ed. 1013; City of Manning v. Ins. Co., 107 Fed. 52, 46 C. C. A. 144. The court did not err in sustaining the plaintiffs' motion for the order.

Affirmed.

