## BRANAN v. WIMSATT.

(Court of Appeals of District of Columbia. Submitted October 8, 1923. Decided May 5, 1924.)

### No. 3920.

1. Evidence ⟜512—Whether it was safe for children to play on lumber pile held not subject of expert testimony.

Refusal to permit expert on stacking lumber to testify whether it was safe for children to play on lumber piled in manner described *held* proper, as question called for opinion as to a matter not requiring judgment of expert.

2. Negligence ⟜32(4)—Care required as to children.

That children had for a long time played in a lumber yard does not impose on owner duty of making it safe for use as playground.

3. Easements ⟜3(1)—Easement appurtenant cannot exist without dominant tenement.

An easement appurtenant cannot exist without a dominant tenement.

4. Easements ⟜3(1)—Method of acquiring easement in gross stated.

An easement in gross cannot be acquired, except by grant in writing, or by prescription, which presupposes a grant.

5. Negligence ⟜32(4)—Children held mere licensees.

Children, who enter a lumber yard by implied permission, stand in no better relation to owner than that of mere licensees, to whom owner owed no duty other than that of not willfully causing them harm, and of not exposing them to hidden perils which could not be avoided by exercising due care.

6. Negligence ⟜32(1)—Care required as to licensees.

Where licensees enter premises of another for their own interest, convenience, or gratification, they assume risk of unconcealed dangers, which are natural to the place, and which can be avoided by proper care.

7. Negligence ⟜32(2)—Licensee distinguished from invitee.

Permission to enter premises, whether expressed or implied, is not an invitation to enter, and establishes no higher relation than that of mere licensor and licensee.

---

⟜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

298 F.—53

**8. Negligence ⊚⇒32(2)—Invitation implied from business.**

Persons engaged in business invite the public to enter their place of business for that purpose, but the invitation is not broad enough to include those who have no business to transact and enter for other purposes.

**9. Negligence ⊚⇒32(2)—Invitation not implied from trespass.**

An owner, who tolerates a trespasser and takes no steps to interfere with his practice of trespassing, does not impliedly extend an invitation to use the premises.

**10. Negligence ⊚⇒32(4)—Care required as to children impliedly invited.**

Owner of lumber yard owes children impliedly invited to enter thereon no duty, except that of maintaining his premises in a condition which would not unnecessarily or unreasonably expose them to danger.

**11. Negligence ⊚⇒32(4)—Care required of strangers as to children.**

Duty devolves on natural guardians and lawful custodians to protect children from consequences of their restless spirit of adventure, and that duty cannot be wholly transferred to strangers.

**12. Negligence ⊚⇒39—Attractive nuisance doctrine held inapplicable.**

Doctrine of attractive nuisance *held* not to apply to children of such age as to know the risk that they assume when they play in a lumber yard; that doctrine being inapplicable to property not per se dangerous, or peculiarly alluring or attractive to children, and excluding minors who have reached the age of discretion, or who, knowing the hazard, assume the risk of doing that which will imperil their lives or limbs.

Smyth, Chief Justice, dissenting.

Appeal from the Supreme Court of the District of Columbia.

Action by Catherine G. Branan, Jr., an infant, by her mother and next friend, Catherine G. Branan, against William A. Wimsatt, trading as Johnson & Wimsatt. From a judgment for defendant, entered on a directed verdict, plaintiff appeals. Affirmed.

Certiorari denied 44 Sup. Ct. 639, 68 L. Ed. ——.

Sidney F. Taliaferro and Thomas P. Littlepage, both of Washington, D. C., for appellant.

W. C. Clephane, J. W. Latimer, and Gilbert L. Hall, all of Washington, D. C., for appellee.

Before SMYTH, Chief Justice, ROBB, Associate Justice, and SMITH, Judge of the United States Court of Customs Appeals.

SMITH, Acting Associate Justice. This is an appeal by the plaintiff from a judgment rendered in favor of the defendant on a directed verdict in an action to recover damages for personal injuries.

From the record in the case it appears that Catherine G. Branan, a minor, 12½ years of age, while playing attempted with other children to climb to the top of a pile of lumber in the lumber yard of William A. Wimsatt. During the struggle of the children to reach the top of the pile 28 boards were displaced and fell on Catherine, with the result that her right thigh was broken, thereby causing a shortening of the right leg, which in its turn produced a slight curvature of the spine.

Plaintiff's evidence established that the lumber yard was on defendant's private property, and that defendant's business office was located across the street and about 50 feet distant from the yard. William

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Newton Cline, 11 years of age, Robert Shelton, 12 years of age, Margaret Saunders, 12 years of age, William Emory Cline, 14 years of age, James Dickenson, 14 years of age, Holden Moore, 16 years of age, and the plaintiff, Catherine Branan, 12½ years of age, testified on behalf of the plaintiff that they frequently used the lumber yard as a playground after school until about dark. All of these witnesses stated without reserve that they had to be careful in climbing the lumber piles, in order to prevent the lumber from falling, and the plaintiff herself frankly admitted that she realized that it was dangerous to climb the lumber piles, and that she tried to be careful. In so far as the record discloses, the lumber was piled in the manner usually and customarily employed in lumber yards. No evidence was introduced showing that the lumber was negligently stored or stacked, or that the piles were dangerous to passers-by on the street, or to those who had a right to be in the yard, or even to trespassers, provided the piles were used for the purposes for which they were made.

During the presentation of plaintiff's case, plaintiff's counsel propounded the following question to the witness Ryan:

"Q. Mr. Ryan, assuming that there is a pile of lumber about 5 feet wide, and from 14 to 16 feet long, composed of 6 inch, 6 inch wide by 7/8 inch, stacked up from 14 to 16 feet high, with the top 28 boards containing no cross-sticks or tie pieces; would this pile of lumber, or a pile of that character, be safe for children to play on?

The court sustained the objection of defendant's counsel to the question, and to that ruling exception was duly taken. On the conclusion of plaintiff's case, and on the facts hereinbefore recited, counsel for the defendant moved the court to instruct the jury to return a verdict for the defendant. The motion was granted, and the court instructed the jury to render a verdict for the defendant, to which instruction plaintiff's counsel excepted. The jury returned its verdict as directed, and judgment was entered thereon in favor of the defendant. From that judgment the plaintiff appealed, and now assigns as error the sustaining of the objection to the question propounded to the witness Ryan and the court's instruction directing the verdict found.

[1] We do not think that either of the assignments of error can be sustained. The witness Ryan's experience in the retail lumber business was such as would probably warrant the admission of his testimony as to the proper, usual, and customary method of stacking lumber in lumber yards. As an expert on the stacking of lumber, however, he could not testify as to whether it was safe for children to play on lumber piled in the manner described in the question which the court excluded. That question called for his opinion as to a matter which did not require the judgment of an expert, and for a conclusion which the jury, and even children, as shown by the testimony, were just as competent to deduce as he was.

[2] The second assignment of error is based on the proposition, first, that children having for a long time played in the lumber yard, the law presumes that the owner invited them to play there, which invitation it is claimed gave to them a legal status not possessed by trespassers, and imposed on the owner the duty of making his lumber yard safe for use as a playground; second, that the defendant main-

tained a nuisance attractive to children and that therefore he was liable, for any damage resulting therefrom. We cannot agree that either proposition is sound. To maintain the first contention would require either a holding that the children of the neighborhood enjoyed an easement appurtenant or an easement in gross in appellant's property, or that they were licensed or invited to use defendant's lumber yard as a playground.

[3, 4] An easement appurtenant cannot exist without a dominant tenement, and an easement in gross cannot be acquired except by a grant in writing or by prescription, which presupposes a grant. In view of the fact that the evidence does not show that the children were the owners of a dominant tenement, or that there was either an actual grant, or a user for the period required to establish a right by prescription, it is apparent that they were vested with no easement in defendant's lumber yard. Moreover, it is questionable whether the unorganized public or neighborhood children can acquire a right in private property by prescription, which presupposes a grant to definite persons, individuals, or legal entities.

As the children had no easement in the property, and no title thereto or interest therein whatever, it is evident that they had no right to use the yard or to be on the premises, and were naked trespassers, unless they used or went on the property by license or invitation of the owner, expressed or necessarily implied. There is no evidence whatever that the owner expressly permitted or invited the children to enter his yard, or to use it, and such permission or invitation can only be implied from the fact that they entered it frequently and played there after school hours. That implication necessarily presupposes that the owner or his responsible agents had knowledge that the children frequently entered and frequently used the yard. As there is no direct evidence of any kind that either the owner or his responsible agents had actual knowledge of such use, scienter on the part of the owner must itself be implied from the fact that the children were accustomed to enter defendant's premises and to play there. Possibly, in the absence of direct evidence, both knowledge of such use and permission to enter upon or play in the yard might be implied.

[5, 6] If, however, an implied permission to enter can be inferred from an implied knowledge that the premises were frequently used as a playground, the fact remains that the children stood in no better relation to the owner of the property than that of mere licensees, to whom the owner owed no duty other than that of not wantonly or willfully causing them harm, and of not exposing them to hidden or other perils, which could not be avoided by exercising the care required by the attendant circumstances. Licensees enter upon the premises of another for their own interest, convenience, or gratification, and at least assume the risk of unconcealed dangers which are natural to the place, and which can be avoided by proper care. Burchell v. Dickisson, 50 L. J. Q. B. (N. S.) 101, 102; Beehler v. Daniels, 18 R. I. 563, 29 Atl. 6, 27 L. R. A. 512, 49 Am. St. Rep. 790; Reardon v. Thompson, 149 Mass. 267, 21 N. E. 369; Schreiner v. Great Northern R. Co., 86 Minn. 245, 247, 90 N. W. 400, 58 L. R. A. 75; Eisenberg v. Mo. Pac. R. Co., 33 Mo. App. 85, 90, 91; Albert v. New York, 75 App.

Div. 553, 556, 557, 78 N. Y. Supp. 355; United Zinc Co. v. Britt, 258 U. S. 268, 275, 42 Sup. Ct. 299, 66 L. Ed. 615.

[7] We now come to the consideration of whether an invitation to enter may be implied from frequent entrance and user. The most that can be implied from entrance and user is a bare permission. A permission, whether express or implied, is not an invitation to enter or use, and establishes no higher relation than that of mere licensor and licensee. Plummer v. Dill, 156 Mass. 426, 427, 31 N. E. 128, 32 Am. St. Rep. 463; McCoy v. Walsh, 186 Mass. 369, 370, 371, 71 N. E. 792; Evansville & Terre Haute v. Griffin, 100 Ind. 221, 223, 50 Am. Rep. 783; Furey v. N. Y. Central & Hudson R. R. Co., 67 N. J. Law, 270, 276, 51 Atl. 505.

[8, 9] Persons engaged in business may be considered as inviting the public to do business with them, and to enter their stores or places of business for that purpose; but it can hardly be said that that invitation is broad enough to include those who have no business to transact, and enter from curiosity or for their own interest, convenience, or gratification. Severy v. Nickerson, 120 Mass. 306, 307, 308, 21 Am. Rep. 514; Ryan v. Towar, 128 Mich. 463, 87 N. W. 644, 55 L. R. A. 310, 92 Am. St. Rep. 481; Plummer v. Dill, 156 Mass. 426, 427, 428, 31 N. E. 128, 32 Am. St. Rep. 463; McEachern v. Boston & M. P. Co., 150 Mass. 515, 516, 517, 23 N. E. 231; Reardon v. Thompson, 149 Mass. 267, 21 N. E. 369; Paolino v. McKendall, 24 R. I. 432, 435, 53 Atl. 268, 60 L. R. A. 133, 96 Am. St. Rep. 736. Neither can it be said that an owner who tolerates a trespass, and who takes no steps to interfere with the practice, has impliedly extended an invitation to either invade or use his premises. Evansville & Terre Haute v. Griffin, supra, 223, 224; Furey v. N. Y. Central & Hudson R. R. Co., 67 N. J. Law, 270, 274, 275, 51 Atl. 505.

[10, 11] But, even if we considered that the children were impliedly invited to enter, the owner of such property as that here involved owed them no duty other than that of maintaining his premises in a condition which would not unnecessarily or unreasonably expose them to danger. To hold that owners are bound to prevent children from swimming in ponds, entering buildings in course of construction, climbing fruit trees, rock piles, or fences, and from trespassing on property not inherently dangerous, or dangerous at all if properly used, would subject such property owners to an intolerable burden, and impose upon them a duty which would require almost superhuman vigilance to perform. Loftus v. Dehail. 133 Cal. 214, 65 Pac. 379, 380; Gillespie v. McGowan, 100 Pa. 144–150, 45 Am. Rep. 365. The duty devolves on natural guardians and lawful custodians to protect children from the consequences of their restless spirit of adventure, and that duty cannot justly be wholly transferred to strangers, who are under no obligation to keep watch and ward over the children of others. Tomlinson v. Vicksburg R. Co., 143 La. 641, 643, 79 South. 174; Sullivan v. Huidekoper, 27 App. D. C. 154, 5 L. R. A. (N. S.) 263, 7 Ann. Cas. 196.

[12] We are not unaware of the doctrine that an invitation to children to enter and use machinery which to them is specially alluring, tempting, attractive, accessible, and dangerous will be implied, and

that owners to escape responsibility must so guard or secure such machines as to prevent their use by children who have not reached the age of discretion and judgment. That doctrine was first announced in Railroad Co. v. Stout, 17 Wall. 657, 21 L. Ed. 745, and was subsequently approved in Union Pacific v. McDonald, 152 U. S. 262–272, 14 Sup. Ct. 619, 38 L. Ed. 434. It was restated, however, in United Zinc Co. v. Britt, 258 U. S. 268, 42 Sup. Ct. 299, 66 L. Ed. 615, and so radically modified that it was regarded by the Chief Justice and two Associate Justices as overruled.

The majority opinion in United Zinc Co. v. Britt, supra, discloses that the company maintained on an abandoned plant belonging to it a pool of water poisoned by sulphuric acid and zinc sulphate. On July 27, 1916, two children camped near by, lured by what appeared to be clear water, went into the pool and were so badly poisoned that both died. On a July day a pool of clear poisoned water, which appeared to be harmless, was certainly most attractive to children, and surely constituted a most tempting enticement to bathe in its deadly waters; nevertheless, the Supreme Court unmistakably held, first, that the doctrine announced in Railroad Company v. Stout, supra, and approved in Union Pacific v. McDonald, supra, needed very careful statement not to make an unjust and impracticable requirement; second, that infants have no greater rights to go on other people's land than adults, and that the mere fact that they are infants imposes no duty upon landowners to expect them or prepare for their safety. In that connection the court took occasion to say that, while the maintenance of property in a condition which is dangerous and attractive to children may be held to have the legal effect of an invitation to children, that principle, if accepted, must be very cautiously applied.

Whether the principle established by the earlier decisions is still in force, the facts of this case do not require us to decide, although it may well be doubted whether those decisions can be reconciled with the later ruling. We do say, however, that we are under no obligation to extend the doctrine declared in Railroad Co. v. Stout to property or children not of the class contemplated by the court in that case. In our opinion, the rule announced in the turntable cases is inapplicable to property not per se dangerous, or peculiarly alluring or attractive to children, and excludes minors who have reached the age of discretion, or who, knowing the hazard, assume the risk of doing that which will imperil their lives or limbs. In so holding we do no more than has been done by the majority of the states which have dealt with such matters and by the Supreme Court itself.

A lumber yard, maintained as was that of Wimsatt, was not an attractive nuisance or per se dangerous, and, if it was, it certainly was not as noxious, harmful, tempting, or alluring to children as was a clear pool of poisoned water on a summer's day. If the owner of a deadly pool be not responsible to children who use it for a purpose for which it seems to be fit, certainly the owner of an everyday lumber yard should not be held answerable for injuries to minors who, knowing the danger, devote his lumber piles to a use for which they were not designed or suitable.

The appellee was not bound to hire guards to exclude the children from his premises, or to employ a supervisor to control their playful activities, or to so arrange his lumber yard that it might be safely used for games of tag or hide and seek. Powers v. Owego Bridge Co., 97 App. Div. 477, 89 N. Y. Supp. 1030, 1031; United Zinc Co. v. Britt, supra, 275 (42 Sup. Ct. 299). The plaintiff and all of the children who testified admitted that they knew that the lumber would likely fall, if care was not used in climbing the piles, and there is therefore no escaping the conclusion that they were of an age and discretion to know the risk, and that, knowing it, they assumed it. At the very most the children were licensees and Wimsatt owed them no duty except that of not exposing them to hidden dangers, or other perils which could not be avoided by exercising the care which existing and apparent conditions demanded.

The judgment appealed from is affirmed.

SMYTH, Chief Justice, dissented from this decision, which was reached prior to his death.