## BEST v. DISTRICT OF COLUMBIA.
### No. 5768.

Court of Appeals of the District of Columbia.

Argued May 3, 1933.

Decided June 30, 1933.

GRONER, Associate Justice, dissenting.

James A. O'Shea, John H. Burnett, and Alfred Goldstein, all of Washington, D. C., for appellant.

William W. Bride, Corp. Counsel, and Robert E. Lynch, Asst. Corp. Counsel, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and VAN ORSDEL, HITZ, and GRONER, Associate Justices.

MARTIN, Chief Justice.

An appeal from a directed verdict in an action for damages for negligence.

The plaintiff below, appellant here, is the administrator of Albert Edward Best, deceased, and as such administrator sued the District of Columbia for damages caused by the alleged neglect of the District in maintaining a certain wharf in a dangerous condition, thereby causing the death of plaintiff's decedent.

In the declaration the plaintiff alleged that the defendant maintained the wharf upon the river edge in the city of Washington, which was used by the District as a sand wharf; that the wharf was adjacent to a public street frequented by many people and children; that it was the duty of the defendant to properly guard the approaches to the wharf in order that it might not be peculiarly attractive to children of tender years; and to maintain and keep a proper lookout so that children of tender years would not be enticed to come on to the wharf and play on or about it; and maintain it in a reasonably safe condition with due regard to the safety of plaintiff's intestate, and not unnecessarily and unreasonably expose him to danger, and to maintain the wharf so that it would not be dangerous and unsafe. But plaintiff averred that the defendant, in violation of its duties, negligently failed to properly guard the approaches to the wharf, in that there was no proper gate or guard upon it, and negligently failed to maintain a safe lookout for children of tender years playing in, on, and about said wharf, so as not to unreasonably and unnecessarily expose such children to danger, and negligently suffered it to remain in a dangerous condition, leaving large holes in the floor unguarded and unprotected; that defendant had full knowledge that the wharf was dangerous, but notwithstanding for a long period of time negligently allowed it to remain in the condition aforesaid, and made no effort to protect or guard children of tender years from the dangerous condition thereof; that the plaintiff's intestate, a child 5 years old, lived with his parents in the vicinity of the wharf, and was incapable of exercising ordinary care and prudence in matters relating to a dangerous wharf, and on April 28, 1929, in company with other young children, was attracted to the wharf and, while playing upon it, without any negligence on the part of plaintiff's intestate, fell through one of the holes in the wharf into the water beneath and was drowned.

The defendant by plea denied all charges of negligence on its part.

The case came on to be tried, and counsel for plaintiff made an opening statement to the court and jury in which he repeated in substance the allegations of the declaration, stating also that some of the boards of the wharf extended over the water and that there were from ten to thirteen holes of varying sizes in the boards; that one of the holes was approximately three feet in diameter; that the wharf had some sort of barrier close to the street; that there was a fence between it and the sidewalk but the side portion was down, and children went in and out at their pleasure; that plaintiff's decedent went upon the wharf on the morning in question and

fell through one of the holes in the floor and was drowned; that there was no one there at the time to keep the children away, and that the watchman who was stationed there arrived some time after the occurrence; that the wharf is not a part of the public highway, but is on private property of the District, and is not a place to which the public is admitted, but is a place where the boats dock and unload sand which is taken out and used by the District.

At the close of this statement counsel for the defendant moved the court to direct a verdict for the defendant on the ground that no cause of action had been stated by plaintiff's counsel, the court sustained this motion, and directed the jury to return a verdict for the defendant, which was done, and judgment entered accordingly. This appeal was then taken.

We cannot commend the procedure adopted by counsel for the defendant in filing the motion for a directed verdict at the close of plaintiff's statement to the jury. The motion raises issues which could properly have been submitted by a motion to dismiss the petition for want of substance. Had such a motion been submitted in ordinary course, the trial justice would have been given time in which to consider it, and, in case it was sustained, the plaintiff might have desired and been given an opportunity to amend. The course pursued in this case resulted in the dismissal of the cause before any testimony was taken, and under circumstances equivalent to a surprise, such as made it difficult for the plaintiff to amend his pleading if such course seemed proper and desirable.

It is apparent, of course, that the plaintiff's cause of action herein is founded upon the "attractive nuisance" doctrine which has been the subject of much litigation and many discordant decisions. In 20 Ruling Case Law, p. 79, it is said: "But inasmuch as children are less able to foresee and appreciate danger than are persons of mature years and intelligence, it is generally recognized that they are entitled to a greater degree of care than adults; and this has been particularly emphasized in the class of cases dealing with injuries from what have been termed 'attractions to children' or 'attractive nuisances.' These decisions establish that while a proprietor may owe no duty to adults with respect to instrumentalities maintained by him, he may be liable for injuries to a child of tender years for injuries sustained from the same instrumentalities. The doctrine has been well stated in the following terms: 'One who maintains dangerous instrumentalities or appliances on his premises of a character likely to attract children in play, or permits dangerous conditions to remain thereon with the knowledge that children are in the habit of resorting thereto for amusement, is liable to a child non sui juris who is injured therefrom.' "

The decision of the Supreme Court of the United States in Sioux City & P. R.. Co. v. Stout, 17 Wall. 657, 21 L. Ed. 745, is the pioneer authority in the establishment of the doctrine in this country. In that case a railroad company was held liable in an action by a child about 6 years old, who had injured his foot while playing with a turntable belonging to the company, notwithstanding the contention that he was a trespasser and that the company owed him no duty. It appeared that the turntable was located in an open space on the private grounds of the company, about 80 rods from the company's depot, in a hamlet of from one hundred to one hundred and fifty persons. The turntable was not attended or guarded by any servant of the company, was not fastened or locked, and revolved easily on its axis, and a servant of the company had previously seen boys playing there and had forbidden them to do so.

It is said that this decision and several others that quickly followed it have given rise to an extraordinary controversy as to the merits of the "doctrine" established thereby and its relation to general theories of law. Many courts have given it their sanction and approval, while others have disapproved it. It is asserted that modern tendencies are toward a restriction rather than an extension of the principle thereby established. 20 R. C. L. 81.

In the case of Union Pacific Railway Company v. McDonald, 152 U. S. 262, 14 S. Ct. 619, 38 L. Ed. 434, a railway company which operated a coal mine near one of its stations in Colorado was in the habit of depositing the slack on an open lot between the mine and the station in such quantities that the slack took fire and was in a permanent state of combustion. This fact had been well known for a long time to the employees and servants of the company, but no fence was erected about the open lot, and no efforts were made to warn people of the danger. A lad 12 years of age and his mother arrived by train at the station and descended there. Neither had any knowledge of the condition of the slack, which, on its surface, presented no sign of danger. Something having alarmed the boy, he ran toward the slack, fell

on and into it, and was badly burned. Suit was brought to recover damages from the railway company for the injuries thus inflicted upon him, and it was held that the company was guilty of negligence and that the lad was not a trespasser, under the circumstances, and had not been guilty of contributory negligence.

In United Zinc & Chemical Company v. Britt, 258 U. S. 268, 42 S. Ct. 299, 66 L. Ed. 615, 36 A. L. R. 28, it appears that the defendant owned a tract of land on the outskirts of a town, on which was an open and abandoned cellar wherein water had accumulated, clear in appearance but dangerously poisoned with chemicals resulting from manufacturing operations formerly conducted there by the defendant. A traveled way passed within 120 feet of the pool and paths crossed the tract. Children came upon the land, entered the water, were poisoned, and died. Defendant knew the condition of the water; but the pool, if visible to the children without trespassing, was not proven to have caused their entry, nor were children in the habit of going to it. It was held that no license or invitation could be implied and that the defendant was not liable.

In the opinion of the court, delivered by Mr. Justice Holmes, comment was made upon the fact that judgment had been entered for the child by the Circuit Court of Appeals, 264 F. 785, largely upon the authority of the McDonald and Stout Cases, supra. The opinion then proceeds with the following exposition: "Union Pacific R. Co. v. McDonald, 152 U. S. 262, 14 S. Ct. 619, 38 L. Ed. 434, and kindred cases were relied upon as leading to the result, and perhaps there is language in that and in Railroad Co. v. Stout, 17 Wall. 657, 21 L. Ed. 745, that might seem to justify it; but the doctrine needs very careful statement not to make an unjust and impracticable requirement. If the children had been adults they would have had no case. They would have been trespassers and the owner of the land would have owed no duty to remove even hidden danger; it would have been entitled to assume that they would obey the law and not trespass. The liability for spring guns and mantraps arises from the fact that the defendant has not rested on that assumption, but on the contrary has expected the trespasser and prepared an injury that is no more justified than if he had held the gun and fired it. Chenery v. Fitchburg R. Co., 160 Mass. 211, 213, 35 N. E. 554, 22 L. R. A. 575. Infants have no greater right to go upon other people's land than

adults, and the mere fact that they are infants imposes no duty upon landowners to expect them and to prepare for their safety. On the other hand, the duty of one who invites another upon his land not to lead him into a trap is well settled, and while it is very plain that temptation is not invitation, it may be held that knowingly to establish and expose, unfenced, to children of an age when they follow a bait as mechanically as a fish, something that is certain to attract them, has the legal effect of an invitation to them although not to an adult. But the principle if accepted must be very cautiously applied."

It is clear that the foregoing decision serves sharply to define and limit the doctrine of "attractive nuisance" in the federal courts. This statement is fully justified by the fact that three Justices of the Supreme Court sitting in the case filed a dissenting opinion in which it is said that the decision overrules two decisions (obviously the Stout and McDonald Cases, supra) which had been considered as leading authorities for half a century. In the present case therefore we accept the rule that a landowner owes no general duty to keep his land safe for children of tender years, or even free from hidden dangers, if he has not directly or by implication invited them there. New York, New Haven & Hartford R. Co. v. Fruchter, 260 U. S. 141, 43 S. Ct. 38, 67 L. Ed. 173.

In relation to the "attractive nuisance" doctrine, this court, in Sullivan v. Huidekoper, 27 App. D. C. 154, held that there is no duty upon the part of a real estate owner, upon whose land is an open and unfenced pond, to keep his land safe for a trespasser, even when such trespasser is a boy 10 years old; the primary duty to guard and protect a child against patent and unconcealed dangers devolves upon the parent, and not upon the owner of land upon which the child is trespassing.

In Hageage v. District of Columbia, 42 App. D. C. 109, this court held that no inherent dangers within the doctrine of attractive nuisances, and no concealed dangers amounting to a nuisance, are involved in uneven, declivitous ground leading to the top of a high retaining wall, or in the fact that the wall is unguarded, so as to render the District of Columbia as owner of the ground liable where it has not designated the same as a public playground, for the death of a child caused by falling down the declivity and over the wall, while at play thereon in accordance with the custom of the children of the neighborhood.

In Branan v. Wimsatt, 54 App. D. C. 374, 298 F. 833, 36 A. L. R. 14, it was held that children who enter a lumber yard by implied permission stand in no better relation to the owner than that of mere licensees, to whom owner owed no duty other than that of not willfully causing them harm, and of not exposing them to hidden perils which could not be avoided by exercising due care, and that the doctrine of "attractive nuisance" does not apply to children of such age as to know the risk they assume when they play in a lumber yard; that doctrine being inapplicable to property not per se dangerous, or peculiarly alluring or attractive to children, and excluding minors who have reached the age of discretion, or who, knowing the hazard, assume the risk of doing that which will imperil their lives or limbs.

Upon a review of the foregoing decisions, particularly that in United Zinc & Chemical Company v. Britt, we are convinced that the plaintiff in the present case has not shown a cause of action against the District of Columbia because of the death of plaintiff's decedent.

It appears from the declaration and the statement of counsel in opening the case that the wharf in question was not open to the public, nor a place where people would be likely to congregate; it was a workaday wharf where sand and gravel were unloaded and taken away for use in the district. The wharf was not frequented by people in general, and it contained nothing that was alluring or attractive to anybody, young or old, unless it can be said that every wharf, however barren, is per se alluring and attractive to children. The wharf was bordered on the land side by a public street and not by a sidewalk; there was a barrier between the street and the wharf, although it is said that part of this was down; there was a watchman in charge of the place, although at this particular time he was absent, arriving there some time after the occurrence. Children would themselves be a nuisance about such a place and would not consciously be tolerated there. If the doctrine of "attractive nuisance" be made to apply to such a situation, it is difficult to see how any owner could safely operate a wharf at any place along the water edge where children might mischievously or from curiosity or sport undertake to play near the water. It cannot be said that under these circumstances there was either directly or by implication a license or invitation extended to anybody, young or old, to go upon the wharf, except those persons having busi-

ness there. This brings the present case within the doctrine of the Britt Case and leads to the conclusion which we have reached that the doctrine of "attractive nuisance" does not apply.

The judgment of the lower court is therefore affirmed, with costs.

GRONER, Associate Justice (dissenting).

I regret I am unable to agree with the conclusion reached by the court in this case.

That the "turntable doctrine," or the "attractive nuisance doctrine," has been materially restricted by recent state court decisions I fully agree, and likewise I agree that, so far as the federal courts are concerned, the effect of the Zinc Co. Case (cited in the opinion of the majority) is to greatly modify the Stout and McDonald Cases (also cited in the majority opinion), but I do not think that, giving the Zinc Co. Case its broadest interpretation, it will support the nonsuiting of the plaintiff here, as was done in the court below.

To maintain a wharf along the side of a public street and allow the fence separating it from the street to fall down from disrepair, and then to load it with sand and leave it unwatched and unattended, is, I think, to expose a bait which children will follow "as mechanically as a fish." I think the action of the court below should be reversed.