Gertrude McGETTIGAN, Individually and as mother and next friend of Charles S. McGettigan, a minor, Plaintiffs,

v.

NATIONAL BANK OF WASHINGTON, a corporation, and Fred A. Smith Company, Defendants.

Civ. A. No. 1313–58.

United States District Court
District of Columbia.

Nov. 20, 1961.

134

Paul R. Connolly, Washington, D. C., for defendants, for the motion.

Harry W. Goldberg, Washington, D. C., for plaintiffs, opposed.

HOLTZOFF, District Judge.

This case involves a phase of that aspect of the law of negligence that is picturesquely denominated as the doctrine of "attractive nuisance". The action is brought in behalf of a little boy, who was badly injured by a flare picked up by his brother on premises owned by one of the defendants and managed by the other as agent. The flare was carried to the plaintiff's home and injured him while he was playing with its contents. The defendants move for summary judgment on the ground that on the admitted facts there is no liability as a matter of law.

The motion is made after exhaustive discovery proceedings have been had, and after the case was thoroughly pretried. The salient facts are not in dispute. Actually the defendants accept the version elicited from the plaintiffs and their witnesses, as most of the events are unknown to the defendants or their agents.

The basic facts on which this controversy hinges are as follows. Adjoining a building in the heart of downtown Washington, which was actively occupied in part for commercial and in part for residential purposes, and located on the same lot there was a small, dilapidated, deteriorated brick structure that had not been used for many years. It was in a state of disrepair. Its doors were broken and access to the interior was not barred. Vagrants and other persons of unsavory types frequently congregated at night in this vacant building, drinking alcoholic beverages and engaging in other activities. Children frequently came into the place to play. A great deal of debris and trash had gradually accumulated in it in the course of time.

The infant plaintiff is a little boy, who at the time of the occurrence about to be described was nine years old. He lived with his family a short distance away from the above mentioned property. One day his brother, who was two years older, while returning home from an errand aimlessly wandered into the abandoned structure. While ransacking among the rubbish, he found a cylindrical, tubular object. He picked it up and carried it home. Later the younger brother started to dismantle it. Unfortunately, the object was a flare and contained gunpowder. The gunpowder exploded and painfully and permanently injured the little boy. The injuries were of a very serious nature that may affect him throughout his life.

No one seems to know what type of flare it was or what it was used for al-

though, apparently, it had been mixed with the debris and trash for some time. No one knew how it got there, or who placed or dropped it on the premises. Neither the owner nor the agent or their employees were aware of its presence. None of the owner's activities on the lot in question involved any use of explosives. The defendants did not store or keep any explosives there.

This action is brought against the National Bank of Washington, the owner of the building as trustee of an estate, and against Fred A. Smith Company, a real estate agent who managed the entire property in behalf of the owner. The plaintiff claims to be entitled to recover damages on the theory of attractive nuisance. The defendants contend that this humanitarian principle is limited to situations in which the property owner himself maintains the structure or places on the property the object, which is asserted to constitute the attractive nuisance, as well as to instances in which he at least is aware of its existence and does nothing to safeguard children against it. It is claimed on behalf of the defendants that the doctrine does not apply if the object constituting the nuisance is placed on the property by a third person and its presence is not known to the property owner. These conflicting contentions present the issue of law to be determined on this motion.

The progenitor of the doctrine of attractive nuisance is a decision rendered by the Supreme Court in 1873, in Sioux City & Pacific Railroad Company v. Stout, 17 Wall. 657, 21 L.Ed. 745. In that case, a child six years of age was playing on a railroad turntable located in an open space near a railroad depot. As was well known to the Company's employees, boys were accustomed to play and swing on the turntable from time to time. On the occasion in question, the child's foot was caught and crushed between the ends of two rails as the turntable was revolving. The turnable was neither fastened nor locked and rotated easily on its axis, although it could have readily been made fast by a latch. It was held that the child was entitled to recover damages from the railroad company for the injury that he had sustained. In discussing this subject, the Court stated that the conduct of an infant of tender years is not to be judged by the same rule which governs that of an adult; that a turntable was a dangerous machine; and that the defendant was under a duty to give it that care and attention to prevent the occurrence of accidents which prudent and careful men ordinarily bestow. While the Court did not discuss the theory on which this decision was predicated, it was later stated that the doctrine of this case is "that he who places upon his land, where children of tender years are likely to go, a construction or agency, in its nature attractive, and therefore a temptation, to such children, is culpably negligent if he does not take reasonable care to keep them away, or to see that such dangerous thing is so guarded that they will not be injured by it when following the instincts and impulses of childhood, of which all mankind has notice".[1] Because of the fortuitous circumstance that the dangerous object involved in this case was a railroad turntable, decisions applying these principles have sometimes been informally referred to as "turntable cases".

In 1922 the Supreme Court in United Zinc & Chemical Co. v. Britt, 258 U.S. 268, 42 S.Ct. 299, 66 L.Ed. 615, partially retreated from the forward position that it had taken in Sioux City & Pacific Railroad Company v. Stout, supra. The defendant in the later case had torn down a building owned by it, leaving a basement and cellar in which water accumulated, clear in appearance, but in fact dangerously poisoned by sulphuric acid and zinc sulphate that had percolated from the owner's works, as the owner knew. Two little children came on the land, went into the water, were poisoned

---

[1]. Dissenting opinion of Mr. Justice Clarke in United Zinc & Chemical Co. v. Britt, 258 U.S. 268, 277, 42 S.Ct. 299, 300.

and died. At the trial, the judge instructed the jury that if the water looked clear, but in fact was poisonous and the children were allured to it, the owner was liable to pay damages for the death of the children. The judgment was affirmed by the Court of Appeals, 8 Cir., 264 F. 785, but was reversed by the Supreme Court in an opinion written by Mr. Justice Holmes. While the Court referred to Sioux City & Pacific Railroad Company v. Stout, without overruling or disapproving it, it held that there can be no general duty on the part of a landowner to keep his land safe for children, if he had not directly or by implication invited or licensed them to come there. The Court practically restricted the Stout case to its facts and did not indicate any real distinction in principle between the two decisions. An emphatic dissenting opinion was written by Mr. Justice Clarke, with whom Chief Justice Taft and Mr. Justice Day concurred.[2]

In reliance on the Britt case, the Court of Appeals for the District of Columbia, two years later, in Branan v. Wimsatt, 54 App.D.C. 374, 298 Fed. 833, declined to apply the doctrine of attractive nuisance to a pile of loose lumber in a lumber yard on which children had been wont to play. In that case while a group of children were struggling to reach the top of the pile, one of the boards was displaced and fell on a little girl, who sustained permanent injuries. The Court held that the child was not entitled to recover damages from the owner of the property. The Court indicated that Sioux City & Pacific Railroad Company v. Stout must be deemed practically overruled by United Zinc & Chemical Co. v. Britt. Thus, for the time being the doctrine of attractive nuisance had very little efficacy, if any, in the District of Columbia.

The doctrine, however, rode out the storm and in 1934 was restored to its original course by the decision of the Supreme Court in Best v. District of Columbia, 291 U.S. 411, 54 S.Ct. 487, 78 L.Ed. 882. That case presented the following situation. A child five years of age while playing on a wharf belonging to the District of Columbia, fell through a hole and was drowned. There were a number of holes in the wharf floor and the area in which they were found was not fenced off. Children had been accustomed to play there. The trial judge directed a verdict in favor of the defendant on the opening statement of plaintiff's counsel. The Court of Appeals affirmed the judgment for the defendant, largely on the authority of the Britt case, although Judge Groner dissented, 62 App. D.C. 271, 66 F.2d 797. On certiorari the Supreme Court, in an opinion by Mr. Chief Justice Hughes, reversed the judgment and reaffirmed the decision in Sioux City & Pacific Railroad Company v. Stout, supra. The ultimate result is that the Britt case in the Supreme Court, and Branan v. Wimsatt, supra, in this jurisdiction, were no longer law or, at least, their authority was very much weakened, and that the doctrine of attractive nuisance evolved from the pioneer decision in Sioux City & Pacific Railroad Company v. Stout, supra, was restored to its original potency.[3]

The Court of Appeals for the District of Columbia acted on this view in Eastburn v. Levin, 72 App.D.C. 190, 113 F.2d 176. In that case piles of junk located on the defendant's yard, which bordered on a street and was not completely fenced

---

2. Prosser on Torts, 2d Ed. 440, states that the opinion of Mr. Justice Holmes "has been much criticized". He also refers in Footnote 30, on the same page, to the fact that the Massachusetts court of which Mr. Justice Holmes had been a member, was one of the minority group that had rejected the doctrine of attractive nuisance entirely. In fact the dissenting opinion in the Britt case indicated that the majority were actually overruling the Stout case.

3. Prosser on Torts, 2d Ed. 440, Footnote 31, suggests that while the Britt case was cited with apparent approval in the Best case, the decision in the latter was quite inconsistent with the former. It, perhaps, would not be too far-reaching a statement to say that, in effect, the Britt case was overruled by the Best case.

off, were deemed to be an attractive nuisance. Several boys entered the yard and one of them climbed on a discarded car, which was in a pile of junk. The car tilted and threw him against broken glass. The property owner was held liable for damages for the child's injury. The Court relied on Sioux City & Pacific Railroad Company v. Stout, and Best v. District of Columbia, supra.

The doctrine of attractive nuisance is, however, in those jurisdictions in which it prevails, universally restricted and circumscribed by well defined and well established limitations. The liability of the property owner for injuries caused to a child by what may be deemed to be an attractive nuisance, is confined to cases in which the property owner either erects or maintains the dangerous structure, or places on the property the object that is dangerous and constitutes the attractive nuisance, or, at most, if a third party is responsible for the nuisance coming into existence, to situations in which the property owner is actually aware of its presence and does nothing either to eradicate it, or to protect children against it. Carter Coal Co. v. Smith, 173 Ky. 843, 191 S.W. 631; Ball v. Middlesboro Town & Lands Co., Ky., 68 S.W. 6; Simmel v. New Jersey Coop. Co., 28 N.J. 1, 143 A. 2d 521, 526; Travell v. Bannerman, 174 N.Y. 47, 66 N.E. 583; Gallagher v. Frederick, 366 Pa. 450, 77 A.2d 427; Cooper v. City of Reading, 392 Pa. 452, 140 A.2d 792, 795.

This principle was summarized as follows in Gallagher v. Frederick, supra, 77 A.2d p. 429.

"The artificial condition on an owner's land on account of which he may be liable for injury to trespassing young children is such as *he* creates or maintains. That, of course, does not necessarily mean that an owner may not be said to maintain such a condition on his land which

another has created but which the owner allows to exist." (Emphasis original.)

Similarly, a property owner is under no duty to inspect his property periodically for the purpose of searching out and discovering whether an attractive nuisance has been created on his premises by some third person, Carter Coal Co. v. Smith, 173 Ky. 843, 191 S.W. 631; Simmel v. New Jersey Coop. Co., 28 N.J. 1, 143 A.2d 521, 526; Gallagher v. Frederick, 366 Pa. 450, 77 A.2d 427; and Cooper v. City of Reading, 392 Pa. 452, 140 A.2d 792, 795.

Thus, in Simmel v. New Jersey Coop. Co., supra, it was stated (143 A.2d p. 526):

"It should be recognized, however, that the land owner or occupier is not an insurer of the infant. He has no duty to periodically inspect the premises in order to ascertain whether third persons, themselves trespassers, might have created dangerous artificial conditions thereon."

Counsel for the plaintiffs cite no cases, and independent research has discovered none, in which the owner of real property has been held liable for injuries caused by an attractive nuisance that had been created on his premises by a third person and of which the owner had not been aware.[4]

The foregoing principles with the limitations surrounding them, have been recognized and formulated by Restatement of the Law, Torts, Sec. 342, as follows:

"§ 342. Dangerous Conditions Known to Possessor.

"A possessor of land is subject to liability for bodily harm caused to gratuitous licensees by a natural or artificial condition thereon if, but only if, he

"(a) *knows of the condition* and realizes that it involves an unreason-

---

4. Prosser, in an article on Trespassing Children, 47 Calif.Law Review, 427, 451, states:
   "No case has ever held that the landowner is required to police his premises, or to make any inquiry, to discover whether there is a likelihood that children will trespass."

able risk to them and has reason to believe that they will not discover the condition or realize the risk, and

"(b) invites or permits them to enter or remain upon the land, without exercising reasonable care

"(i) to make the condition reasonably safe, or

"(ii) to warn them of the condition and the risk involved therein." (Emphasis supplied.)

Comment c. of Section 342, of the Restatement, states:

"c. *Inspection.* A possessor of land owes to a gratuitous licensee no duty to prepare a safe place for the licensee's reception or to inspect the land to discover possible or even probable dangers."

Counsel for the plaintiffs stress the decision of the Court of Civil Appeals of Texas, in Dezendorf Marble Co. v. Gartman (Texas) 333 S.W.2d 404, which has a superficial similarity to the instant case. In both cases, a child picked up on the defendant's grounds a container comprising an explosive, took it home and was injured when it exploded. It also appeared that children had been accustomed to come to play on the defendant's land. There the resemblance ends. The distinction between that case and the case at bar lies in the very vital circumstance that in the Dezendorf case the blasting cap that injured the child, belonged to the defendant and had been thrown on the ground by the defendant's employees. The defendant had been quarrying rocks on the property and the blasting caps were used in these explosions. If in the instant case the defendant had been using explosives on his property and the flare had been left lying around by one of his employees, the Dezendorf case might be applicable. As it is, however, no support can be found in it for the plaintiffs' position.

The principles to be evolved from the line of authorities discussed in this opinion, may be summarized as follows. If the owner or possessor of real property maintains a hazardous structure, or keeps a dangerous object, on his land, which has a natural tendency to attract or allure children, and if children are accustomed to visit or congregate on the grounds, then the property owner is liable for any injury that may be sustained by a child as a result of contact with the structure or object. This liability extends to a situation in which the dangerous object was placed on the property by a third person if the property owner had actual knowledge of its presence. On the other hand, there is no liability on the part of the owner if a third party creates the dangerous situation and its existence is unknown to the property owner. The latter is under no obligation to make periodic inspections in order to ascertain whether any hazard has been created by any third person and to safeguard against any such remote possibility.

Applying the foregoing principles to the admitted facts of this case, no basis for liability is discernible. No legal or moral obligation can be perceived on the part of the defendants to pay the plaintiffs for the result of their tragedy.

The defendants' motion for summary judgment is granted.