## YOUNG MEN'S SHOP v. ODEND'HAL.
### No. 7645.

United States Court of Appeals for the District of Columbia.

Decided March 31, 1941.

Lawrence Koenigsberger, Morris Simon, and Eugene Young, all of Washington, D. C., for appellant.

H. Mason Welch, of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and EDGERTON and RUTLEDGE, Associate Justices.

RUTLEDGE, Associate Justice.

Plaintiff, appellee here, brought his action for damages for personal injuries sustained by falling as he entered defendant's business premises. The judgment was rendered upon the verdict of a jury. Defendant seeks reversal, claiming that there was no evidence of negligence; that the court erred in allowing the jury to determine whether plaintiff was an invitee or a licensee and that he was not guilty of contributory negligence; and that it erred also in refusing to give certain other instructions requested by defendant. We think there was no error in any of these respects.

Defendant's shop faces south on F Street, where the principal entrance is, the one ordinarily used by customers. The rear of the shop is on the north, abutting upon an alley, directly across which lies a large vacant lot which is used commercially for parking automobiles. This lot extends northerly to G Street. On G Street about 100 feet west of the lot is Olmsted's Grill. On the day of the injury, December 19, 1936, plaintiff had lunch at this restaurant. Between two and three o'clock in the afternoon he left the Grill to go to defendant's shop in order to purchase Christmas presents. It was raining hard and he took the

short route, walking east on G Street to the parking lot, crossing it and the alley, to the rear door of defendant's shop. As he entered through this door the fall occurred.

The physical conditions of the entrance are important. Plaintiff testified that there was a slight rise, but no step, from the alley pavement to the doorsill or frame, though a witness for defendant said there was one step outside. The door had a latch on the right side. It opened inwardly. On the outside it closed at the bottom against a narrow wooden strip or beading. The bottom of the door opened about eighteen inches above the floor level of the shop. Two steps led from the doorsill to the floor level. The higher one was less than five inches wide and on a level with the bottom of the door. The lower one was broader. The door opened within an aperture which had been made for this purpose in a balcony or "mezzanine floor" that extended entirely across the rear of the shop at a level about three feet below the top of the door. The aperture was slightly more than wide enough to permit the door to open. The ceiling under the balcony was painted black. The situation was such, therefore, that one opening the door would be confronted with the balcony at about eye level and within a few feet from his face.

The evidence showed that the rear portion of the shop was not used for display of goods and sales, but was employed, together with the space on the balcony, for office and storage purposes. There was no evidence that customers were accustomed to enter and leave the shop through the rear door. On the other hand, defendant presented no evidence to show that they did not do so. The upper half of the door contained a glass pane, which was covered with an iron screen or scroll. There were windows on each side of the door. There was testimony by defendant's witnesses from which the jury might have inferred that the space beneath the balcony and adjacent to the door was well lighted ordinarily, both by natural light from the doorpane and the windows and by artificial light. But plaintiff's testimony was that on the day of his fall the place presented "a dismal appearance" and that his first impression was that it "was dimly lighted, and what light was present was reflected from the front of the store." He testified also that he had not used the rear entrance prior to the day on which he fell, although

he had made frequent purchases at the shop.

The only evidence concerning what occurred immediately at the time of plaintiff's entrance and fall is that given by himself. He testified that as he approached the door he observed the sign, "Young Men's Shop," attached to the wall at one side, and identified defendant's door in this manner. Concerning what followed, he said: "As I arrived, I opened the latch with my right hand, and pushed the door inwardly into the store. I advanced, and as my left foot was about to follow, I saw this black balcony effect right ahead, and my natural inclination was to observe that. It was right on a level with the eye, and my tendency was to duck, to get from under it. * * * My right heel struck the ledge that was on the level of the street or the alley and projected inwardly only a very short distance beyond the door. It did not sustain your foot, and naturally I was thrown forward. * * * As I was thrown forward, I landed on the floor of the Young Men's Shop." He further testified, as stated above, that his first impression, on opening the door, was that the store was dimly lighted, "the balcony was in the way; it was painted black, and there was a dismal appearance, as though the light was insufficient."

The evidence further showed that the plaintiff was crippled with a rheumatic condition of the hands and an abnormal condition of the feet, which had existed from birth and resulted in abnormality of gait. He testified that this made it impossible for him to move rapidly and, by inference, that he was not doing so when he approached and entered the door.

■ We think the evidence clearly was sufficient to sustain a finding that the defendant was negligent in maintaining a condition of danger in this entrance, if the plaintiff is a person to whom was owing the duty due to an invitee. The difference in the levels of the base of the door and the floor, the narrowness of the steps and particularly of the higher one, the inward opening of the door, the conflict in the evidence as to the adequacy of the lighting at the time of the fall, the presence of the balcony in its peculiar relation to the door and to persons entering it, combine to present a situation which the jury might well find to involve unreasonable danger, particularly to one who previously had not used and was not familiar with the en-

trance. We think none of the cases cited by the defendant to support the view that there was no evidence of negligence presents the same combination of elements of danger as this one did. In Bell v. Central National Bank, 1907, 28 App.D.C. 580, there was a combination of steps, some of which were not of uniform height, and imperfect lighting. The court held that this was not in itself sufficient to constitute negligence. It does not appear, however, that the situation presented the same degree of danger as existed here from the fact that the door opened immediately upon the narrow step and that one entering through the doorway would be confronted with the balcony as an element of surprise. Nor was the situation identical with that in Garrett v. W. S. Butterfield Theatres, 1933, 261 Mich. 262, 246 N.W. 57, where there was merely a difference of floor levels in a dimly lighted lounge of a theatre. The court held that the mere existence of different floor levels in such a place was so common that it should be anticipated and without more such construction was not negligence. We think that similar distinctions exist with reference to the facts presented in the other cases cited by the defendant.

■ Nor was there error in the court's refusal to find that the plaintiff was guilty of contributory negligence as a matter of law. Defendant apparently advances two theories in support of the contrary view. One is that "the very presence of the door leading from the alley by a step-up was warning to those not acquainted with the surroundings to ascertain whether the floor of the building was on a level with the threshold of the door or whether it was reached by descending steps." Defendant appears to assume also that the plaintiff upon opening the door had sufficient opportunity for reflection to enable him to recognize that he was proceeding into a dimly lighted or dark place and therefore that it was negligence for him to go on before ascertaining the character of the place ahead.

The first theory assumes that there was a step outside the door, although the evidence was in conflict concerning this. Even if one existed, we do not think that fact sufficient to put the plaintiff on notice that there was or might be a step down inside the door. The rise outside was slight. The more common arrangement is that doors open on the floor level rather than above it. Consequently it could not

be said as a matter of law that one entering the door for the first time would be placed on guard by its external appearance as to the possible existence of the unusual interior situation which did exist.

Concerning the second theory, it may be noted that it is in direct conflict with defendant's effort to show that the space around the entrance was lighted adequately. Furthermore, it disregards the fact that, according to the only evidence in the record concerning what took place at the moment of the fall, the possibility is excluded that the plaintiff had time after opening the door to observe the dangerous situation before proceeding down the steps. His testimony is the only evidence concerning the immediate circumstances of the fall. It shows that as he opened the door his heel caught on the tread which, together with the narrowness of the higher step, caused him to lose his balance and fall. In other words, he came upon the dangerous condition entirely unawares and was caught by it before he had an opportunity to realize that danger existed. This view is further sustained by his testimony that he was startled by the appearance of the balcony immediately before his face as he was opening the door and thus was caused "to duck, to get from under it." In other words, the dangerous condition of the entrance caused the fall to come about practically by reflex action rather than as a result of proceeding deliberately and with forewarning into an unknown situation. The cases which defendant cites to support its contention concerning contributory negligence deal with situations where the facts show there was opportunity for observation before proceeding into the dangerous surroundings. In some of them, too, the evidence shows that the plaintiff was proceeding hurriedly and without attention. Cf. De Honey v. Harding, 8 Cir., 1924, 300 F. 696.

■ The most serious issue in the case is whether the plaintiff was an invitee or a licensee. It is admitted that his purpose in going to the shop was to transact business with the defendant, so that in this respect he was clearly an invitee. However, the defendant urges that the invitation did not include use of the rear entrance or the rear portion of the shop for purposes of entrance, but extended only to the front entrance on F Street and that part of the shop toward the front customarily used for dealing with customers. To sustain this view defendant cites numerous

authorities to the effect that the duty of an owner of premises to which persons are invited for purposes of trade applies only to that portion of them which is appropriated by him as a place in which his business is conducted and does not include portions normally used only by employees, servicemen and others in coming for other purposes than trade.[1] He relies particularly upon Rooney v. F. W. Woolworth Co., 1902, 74 Conn. 720, 52 A. 411, and Keeran v. Spurgeon Mercantile Co., 1922, 194 Iowa 1240, 191 N.W. 99, 27 A.L.R. 579. The former held that a customer who asked and received permission to leave the store by the rear entrance leading to an alley was not an invitee. The court found that the door was intended for the use of expressmen and deliverymen, although it was used also by others to some extent for their own convenience. It held that the plaintiff used the door for her own convenience and not because she was led to believe from the arrangement of the store, the condition of the premises or any act of the defendants, that it was designed for use by customers. In the Keeran case the court sustained a verdict which was directed for the defendant where a customer previously had left his coat and a clerk had placed it in a closet back of the counter. The plaintiff returned to get his coat, went behind the counter for that purpose and on opening a door fell down an unlighted stairway which was concealed by the door. The court held that the invitation to the customer did not extend to the space behind the counter, which according to its view plaintiff entered exclusively for his own purposes and convenience. Without expressing approval or disapproval of this decision or of that in the Rooney case, we think the facts of the present one are sufficiently different to distinguish them. The evidence is uncontradicted that on the wall adjacent to the doorway here there was a sign reading "Young Men's Shop," and there is also evidence given by a witness for the plaintiff that "there was a sign saying 'entrance,' or something of the sort." Furthermore, the door was located directly across the alley from a parking lot which was used by large numbers of owners of automobiles who were possible customers. The sign did not limit the use of the door to servicemen or indicate that customers were not allowed to use it. In these circumstances we think it was not unreasonable for prospective customers, whether users of the parking lot or others, to regard the sign as an invitation to enter the premises for purposes of trade. However, it is not necessary for us to determine as a matter of law that the plaintiff was an invitee. The trial court, we think properly, submitted to the jury the question whether under these circumstances he occupied the position of an invitee or of a mere licensee. We think it was proper for the jury to decide on this evidence whether the sign so worded and situated constituted an invitation only to servicemen, or to them and to customers.

■ Defendant complains also of the court's refusal to grant certain instructions which were requested, one of which sought to have the jury told as a matter of law that plaintiff was a licensee, not an invitee. The others related to the issue of contributory negligence, assuming that it was proper for that to be submitted to the jury. What we have said above disposes of the former. As to the latter, the court preferred to submit the issue upon all of the facts under general and we think appropriate instructions for that purpose rather than upon the specific and limited facts which were set forth in the prayers. While the requested instructions might not have been erroneous if given, as to which we express no opinion, we think the general instructions sufficiently informed the jury concerning the plaintiff's duty to exercise reasonable care in entering the premises, taking account of all of the circumstances, and concerning the consequences of his failure to do so. The jury was cautioned also that in this connection what would constitute reasonable care on the part of the plaintiff would depend to some extent upon whether he was a business visitor or a licensee, and as to the degree of care which each might expect from the owner of the premises.

There being no error, the judgment is affirmed.

1 See Schmidt v. Bauer, 1889, 80 Cal. 565, 22 P. 256, 5 L.R.A. 580; Ryerson v. Bathgate, 1902, 67 N.J.L. 337, 51 A. 708, 57 L.R.A. 307; Herzog v. Hemphill, 1907, 7 Cal.App. 116, 93 P. 899; Menteer v. Scalzo Fruit Co., 1912, 240 Mo. 177, 144 S.W. 833; Kneiser v. Belasco-Blackwood Co., 1913, 22 Cal.App. 205, 133 P. 989; Branan v. Wimsatt, 1924, 54 App.D.C. 374, 377, 298 F. 833, 36 A.L.R. 14; Wall v. F. W. Woolworth Co., 1925, 209 Ky. 258, 272 S.W. 730; Collins v. Sprague's Benson Pharmacy, 1932, 124 Neb. 210, 245 N.W. 602.