**ARTHUR v. STANDARD ENGINEERING CO.**

No. 10735.

United States Court of Appeals District of Columbia Circuit.

Argued April 27, 1951.

Decided Oct. 25, 1951.

904

Louis Ginberg, Washington, D. C., with whom Dorsey K. Offutt, Washington, D. C., was on the brief, for appellant.

John H. Burnett, Washington, D. C., with whom Charles W. Arth, Washington, D. C., was on the brief, for appellee.

Before WILBUR K. MILLER, PRETTYMAN and WASHINGTON, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

The appellant, John H. Arthur, was an employee of the H. B. Foley Company which was the electrical subcontractor on a local building project. The appellee, Standard Engineering Company, was the steamfitting subcontractor.

The steamfitters constructed a rude scaffold for their own use in accomplishing their part of the work. Parallel with and about four feet from a large pipe already installed, they placed a long plank, each end of which rested on a rigid support. Two shorter planks were put in a transverse position to span the four-foot space between the long plank and the pipe with which it was parallel. A sheet of plywood, four by six feet, on the two transverse boards served as a platform for the workmen.

Arthur and other electrical workers asked and received Standard Engineering Company's permission to use the scaffold. Much was said in the evidence and in argument as to whether their alteration of the arrangement of the boards increased the length of the long span and so weakened the scaffold, but we shall dispose of the appeal without reaching that question. It is sufficient to note that the electricians used the re-arranged scaffold for several days with-

out incident, but that finally an accident occurred which gave rise to this litigation.

On that occasion, Basile, another electrical worker, was standing at one end of the long supporting plank, with one foot on it and the other on an I-beam to which the plank was attached. A second electrician, Gorrell, was standing on the plywood platform. As John H. Arthur mounted the long plank at the end opposite that on which Basile stood, and walked toward his two co-workers, Basile moved off the plank and stood on the I-beam. "The scaffold had a little spring in it. * * * I was afraid," he said. He did not want to stay on the plank while Arthur was on it. The long supporting board broke when Arthur was half way across. He fell about fifteen feet and sustained serious injuries, for which he sought to recover damages from the Standard Engineering Company, the steamfitting subcontractor whose employees originally constructed the scaffold.

The plaintiff-appellant's theory was that in using the steamfitters' scaffold he was an invitee to whom the Standard Engineering Company owed the duty of furnishing a reasonably safe place to work; that the scaffold was in fact "unsafe, improper, defective, insecure." He relied on *res ipsa loquitur*.

There was evidence that it has long been the custom in the building trade for a scaffold constructed by the employees of one subcontractor to be used by the employees of other subcontractors. In like manner, the different crafts customarily make common use of ladders and similar equipment. On the project involved here, the steamfitters had used ladders owned by the electricians.

At the conclusion of the evidence the trial judge directed a verdict for the defendant-appellee. He thought Arthur was a licensee in using the scaffold and that consequently Standard Engineering Company owed him no duty except to refrain from willfully or wantonly injuring him; that a licensor is not liable to a licensee except for damages occasioned by what is sometimes called "active negligence," and that such negligence was not shown in this case. Arthur appeals, insisting he was an invitee entitled to be furnished with a safe scaffold.

It is well settled that an invitor owes his invitee the duty of furnishing him with reasonably safe premises or appliances and will be held liable for injuries caused by a negligent failure to perform the duty. Schwartzman v. Lloyd, 1936, 65 App.D.C. 216, 82 F.2d 822; Hellyer v. Sears Roebuck & Co., 1933, 62 App.D.C. 318, 67 F.2d 584; Bell v. Central National Bank, 1907, 28 App.D.C. 580. It is equally well established that a licensor is not liable in damages for the injuries of a mere licensee, unless the injuries were the result of the licensor's active negligence. Radio Cab v. Houser, 1942, 76 U.S.App.D.C. 35, 128 F.2d 604; Branan v. Wimsatt, 1924, 54 App.D. C. 374, 298 F. 833, certiorari denied 265 U. S. 591, 44 S.Ct. 639, 68 L.Ed. 1195; Brauner v. Leutz, 1943, 293 Ky. 406, 169 S.W.2d 4.

The case turns, therefore, on the question whether an employee of a subcontractor is in the legal status of a licensee or that of an invitee when he uses, either by permission expressly given or implied from established custom, a scaffold erected by the employees of another subcontractor for their own use. The question is one of first impression in this jurisdiction, and the few authorities elsewhere are not in accord. For example, the courts of New York and Kentucky have taken opposite views.

The Court of Appeals of New York worked out what Shearman and Redfield in their work on the Law of Negligence call the "reasonable convenience" rule.[1] In Quigley v. Thatcher, 1912, 207 N.Y. 66, 100 N.E. 596, it was held that where a general contractor erects on the skeleton framework of a building under construction a scaffold or platform for the use of his own immediate employees, but so constructs and locates it that his subcontractor must of necessity or under the requirements of reasonable convenience in the performance of his work use the same, the general contractor should have anticipated such use and

1. Zipp's 1941 revision, v. 2, § 274, p. 683.

is liable to the subcontractor and his employees for the safety thereof. In similar circumstances, but with the difference that the scaffold was erected by another subcontractor and not by the general contractor, it was held in McGlone v. Angus, 1928, 248 N.Y. 197, 161 N.E. 469, 470, that such subcontractor was under a duty to use reasonable care to construct it so it would be safe for those who "would naturally and customarily use it in the course of the work."

Neither of the New York opinions considered the question of the legal status of the subcontractor's injured workman—as to whether he was in the role of a licensee or that of an invitee—when he mounted the scaffold which had been erected by the employees of the general contractor or of another subcontractor. The court did not employ the "mutual advantage" test, although the Supreme Court had said in Bennett v. Louisville & N. Railroad Co., 1880, 102 U. S. 577, 584–585, 26 L.Ed. 235, " * * * 'The principle * * * appears to be that invitation is inferred where there is a common interest or mutual advantage, while a license is inferred where the object is the mere pleasure or benefit of the person using it.' "

Contrary to the action of the New York tribunal, the Court of Appeals of Kentucky, in Brauner v. Leutz, 1943, 293 Ky. 406, 169 S.W.2d 4, applied the principle so stated by the Supreme Court to facts which are strikingly similar to those of the case before us. There Brauner was the painting contractor on a building project and Leutz had the contract to do the carpenter work. The carpenters had constructed a scaffold for their own use but granted the painters permission to use it. Brauner was injured when the scaffold collapsed. An able and distinguished judge spoke for the court and said, 16 S.W.2d at page 6, that, in order to create the relation of invitor and invitee, " * * * the invitee must go upon and appropriate the premises or the facilities of the invitor by and through which some benefit is received by the latter. In other words, the mission of the invitee should be for the mutual benefit of both parties."
Since the facts did not show such mutual benefit, Judge Thomas said, "We, therefore,

have an unvarnished and unqualified case of the status of licensor and licensee * * *," and added, later in the opinion: "The doctrine appears to be universal that a licensor owes no duty to a licensee to provide safe places or premises for the occupancy or use of his licensee, save and except to abstain from doing any intentional, wilful (and in some jurisdictions gross reckless) act endangering the safety of the licensee."

We think the Kentucky court, following as it did the doctrine suggested by the Supreme Court, reasoned soundly and reached the correct solution of the problem. We adopt, therefore, the mutual benefit test for determining whether the appellant was a licensee or an invitee, in preference to the New York reasonable convenience doctrine.

The appellant says if any doubt existed whether he was a licensee or an invitee the question should have been submitted to the jury, as we held with respect to the circumstances shown in Young Men's Shop v. Odend'hal, 1941, 73 App.D.C. 354, 121 F.2d 857. Unquestionably so, when the status depends upon issues of fact created by a contrariety of evidence. But here the facts essential to the determination of appellant's status are not in dispute, and whether they showed him to have been a licensee or an invitee was a legal question for the court.

A recapitulation of the facts will show that to be true. The witnesses agreed that the steamfitters built the scaffold for their own use and permitted Arthur and the other electricians to use it. But the permission did not stamp him as an invitee. We said in Branan v. Wimsatt, supra, 54 App. D.C. at page 378, 298 F. at page 837: " * * * A permission, whether express or implied, is not an invitation to enter or use, and establishes no higher relation than that of mere licensor and licensee."

There was slight, if any, contradiction of the positive statement made by several witnesses that it is the general custom for scaffolds, ladders and such, which were built or provided by one subcontractor, to be utilized by the employees of other subcontractors. But again this fact did not

make Arthur an invitee. The existence of such a custom simply permits consent to the use to be implied in instances where consent was not expressly given. Brauner v. Leutz, supra.

■ There was no evidence tending to show that the Standard Engineering Company had any interest in, or derived any benefit or advantage from, the work done by Arthur and the other Foley employees as they stood on the scaffold. So, under the mutual benefit test, Arthur was not an invitee. It was proved, however, that the steamfitters had used the electricians' ladders, from which it is argued that Standard Engineering gave the use of the scaffold as a *quid pro quo* for its use of the ladders, and in that fashion derived benefit from Arthur's presence on the plank.

The argument pushes the mutual benefit theory too far, we think. Reciprocal use of different pieces of equipment simply shows the custom in operation. From it, consent by each subcontractor to the use of its equipment by other subcontractors may be implied, just as it may be implied from proof of the custom alone in cases where there was no actual reciprocal use or no express consent.

■ The true test under the mutual advantage theory is whether the owner of a scaffold or other appliance receives benefit or advantage from the permitted use by another of that particular piece of equipment. If so, the user is an invitee; if not, he is a licensee. As the court said in Larson v. Tri-City Electric Service Co., 7 Cir., 1943, 132 F.2d 693, 697, "A license imputes permissive authority from one occupying a superior position. A licensee has no right to occupancy except by permission of one in authority * * *." Here the Standard Engineering Company, being the owner of the scaffold, occupied a superior position with respect to it.

We conclude that Arthur was a licensee. The trial judge was therefore correct in directing the jury to find for the Standard Engineering Company.

Affirmed.