**Arthur H. HALIN and Esther C. Halin, Appellants,**

v.

**UNITED MINE WORKERS OF AMERICA and Mohler Construction Company, Appellees.**

**No. 12255.**

United States Court of Appeals District of Columbia Circuit.

Argued March 22, 1955.

Decided Jan. 16, 1956.

Mr. Lester Wood, Washington, D. C., for appellants.

Mr. Kahl K. Spriggs, Washington, D. C., for appellee United Mine Workers of America.

Mr. J. Harry Welch, Washington, D. C., with whom Messrs. H. Mason Welch and John R. Daily, Washington, D. C., were on the brief, for appellee Mohler Construction Company.

Before WILBUR K. MILLER, BAZELON and WASHINGTON, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

United Mine Workers of America, the owner of an old office building, engaged the Mohler Construction Company to do certain reconstruction work therein. It also contracted with J. C. Harding Company to install a new electrical system in the building. Arthur H. Halin, a Harding employee, brought this suit for damages against UMW, Mohler and his own employer, alleging that, due to their negligence "in failing to provide adequate board-walks for the workmen, said plaintiff, Arthur H. Halin, fell a distance of twenty-five feet from one floor to a lower floor, and suffered injuries and discomfort as a result thereof." Halin's wife also sued for loss of consortium.

After a jury had been impaneled, an opening statement was made by plaintiff's counsel and thereupon the court, without taking testimony, granted the motions of the defendants UMW and Mohler, for a directed verdict on the ground that no cause of action had been stated.[1] With respect to UMW, the trial

---

1. The action against J. C. Harding Company was dismissed with prejudice on the joint motion of plaintiffs and Harding. This was probably done because, as is indicated in the record, Halin had collected compensation which, under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq. (1952), applicable in the District of Columbia, § 36–501, D.C.Code (1951), 33 U.S.C.A. § 901 note, precludes recovery from the immediate employer.

Although counsel's statement referred to Mohler as the general contractor and Harding as a subcontractor, it is plain he meant to describe Mohler as the principal contractor, who had undertaken most of the work, and that Harding's role as the electrical contractor was relatively minor; for he said each of those companies had contracted directly with UMW. Harding was independent of Mohler. It follows that we do not have presented here a situation where a subcontractor has taken out compensation insurance and the principal contractor has not, in which the question arises whether the latter is relieved of his common law negligence liability to an employee of the subcontractor for an injury sustained. Cf. Woodner Co. v. Mather, 1954, 93 U.S.App.D.C. 234, 210 F.2d 868.

786

judge expressed the view that the owner of a building who contracts for repairs is not under an active duty to furnish the contractor's employees with a safe place to work. In granting Mohler's motion, the judge relied upon our decision in Arthur v. Standard Engineering Co., 1951, 89 U.S.App.D.C. 399, 193 F.2d 903, 32 A.L.R.2d 408, certiorari denied 1952, 343 U.S. 964, 72 S.Ct. 1057, 96 L.Ed. 1361, and held counsel's statement did not show Halin was Mohler's "mutual benefit" invitee in using the allegedly inadequate boardwalk.

According to the opening statement, Mohler's men had removed the flooring on the seventh floor and had laid loose planks across the exposed joists "so that the electricians could go in and do certain work in under the joists." Halin went to that floor to "tie in" a panel box, which Mohler's superintendent had told Harding's assistant foreman must be done before the old joists and other old material were removed. When Halin stepped from the first board to the second, "it suddenly gave way with him and caused him to fall between the joists * * * landing on * * * the sixth floor * * *."

■ The trial judge was clearly correct in directing a verdict for UMW. It was not charged with active negligence, and had no part in, nor any duty with respect to, laying or maintaining the temporary walkway. If there was a dangerous condition, it was created by those whom UMW had engaged to renovate the building. Restatement, Torts § 426 (1934). In regard to Mohler, whether a directed verdict was correct depends upon what was said in the opening statement concerning the relationship between that defendant and Halin, when the latter used the appliance set in place by the former. If he was an invitee, Mohler owed him the duty of furnishing him with a reasonably safe walkway. If he was a licensee, Mohler is not liable unless the injuries were caused by its active negligence, which is not charged here. Arthur v. Standard Engineering, supra, and cases there cited.

■ In cases of this sort, we have adopted the "mutual advantage" theory in regard to invitees. Arthur v. Standard Engineering, supra; Firfer v. United States, 1953, 93 U.S.App.D.C. 216, 208 F.2d 524; Martin v. United States, 1955, 96 U.S.App.D.C. 294, 225 F.2d 945. The principle is that invitation is inferred where there is a common interest or mutual advantage, while license is inferred where the object is the mere pleasure or benefit of the person using another's appliance. Cf. Bennett v. Louisville & Nashville Railroad Co., 1880, 102 U.S. 577, 585, 26 L.Ed. 235.

We reproduce a portion of the opening statement which has to do with the mutual advantage question:

" * * * [W]e will show you that after they had ripped out the floor of the eighth [sic] floor, that Mohler's construction men, so that the electricians could get in and do certain work in under the joists, had put down certain walk boards, which were placed over the width of the beams or joists under the floor."

"Mohler Construction Company, the main contractor in this work that was being done and to be done, started off by tearing out certain inside portions of the building.

"The Harding Electrical Company, their electricians who went to do this electrical work, could do nothing until Mohler had pulled out certain portions of the building, and after that would be done, then the electricians would follow along; after the Mohler Construction Company had torn it out because they couldn't get onto the floor until the floor was torn off or parts of it, or, that the old wiring through the joists, the floor beams, could be all taken out, the panel boxes on every floor where the electrical connections went into, could be replaced by new.

"And that eventually after that old wiring and electrical equipment was taken out, Mohler Construction Company then, in turn, would come

back after that and would lay concrete floors instead of this old floor.

"This was a very old building and then instead of using wires through the joists, old electrical distribution system, they were going to use conduits.

"So that the work of each of these contractors mutually benefited the other, and the Mohler Construction Company was the lead off contractor who had to start the work, set the pace, before the electricians could do anything.

"We will show you further that in connection with the progress of the work, for instance, on the seventh floor where this accident occurred, that the foreman or assistant foreman of Harding Company had been instructed by the superintendent or foreman of Mohler Construction Company that on the seventh floor there had been a panel box, electrical, certain connections taken out of it and that the flooring on the seventh floor was going to be completely torn up, and that that panel box had to be tied to the wall or it would fall down onto the next floor.

"And we will prove to you further that each day as the work progressed, the foreman in charge, whether it was his assistant or the main foreman for Harding Company, would get his instructions from the Mohler Company how to follow the next day as the work was planned and where the next electrician should follow up the Mohler employees as they progressed."

 Plaintiffs are entitled to the benefit of all inferences that may be drawn from their counsel's statement. To warrant the court in directing a verdict for Mohler upon that statement, it is not enough that the statement be lacking in definiteness but it must clearly appear after resolving all doubts in plaintiff's favor, that no cause of action exists. Best v. District of Columbia, 1934, 291 U.S. 411, 415, 54 S.Ct. 487, 78 L.Ed. 882.

We think plaintiffs sufficiently offered, in the language from the statement quoted at some length above, to prove that Halin was a mutual advantage invitee when he stepped on the boards. That being true, they were entitled to proceed with proof, in an attempt to establish that status and, as well, negligence on the part of Mohler.

Affirmed as to United Mine Workers; reversed as to Mohler Construction Company.