Elton P. LORD and Geneva Lord, Appellants,

v.

LENCSHIRE HOUSE, LTD., Appellee.

LENCSHIRE HOUSE, LTD., Appellant,

v.

Elton P. LORD and Geneva Lord, Appellees.

Nos. 14886, 14888.

United States Court of Appeals

District of Columbia Circuit.

Argued Oct. 8, 1959.

Decided Nov. 25, 1959.

Petition for Rehearing En Banc Denied Dec. 18, 1959.

Burton, dissented.

Mr. Clarence G. Pechacek, Washington, D. C., with whom Mr. Clifford C. Kaslow, Washington, D. C., was on the brief, for appellants in No. 14886 and appellees in No. 14888.

Mr. William E. Stewart, Jr., Washington, D. C., with whom Mr. Richard W. Galiher, Washington, D. C., was on the brief, for appellee in No. 14886 and appellant in No. 14888.

Before Mr. Justice BURTON, retired,* PRETTYMAN, Chief Judge, and DANAHER, Circuit Judge.

DANAHER, Circuit Judge.

Mr. Lord sought damages because of personal injuries incurred as we shall describe, and Mrs. Lord sued for loss of consortium. The District Judge directed a verdict for the landlord, Lencshire

* Sitting by designation pursuant to 28 U.S.C. § 294(a).

House, Ltd. He deemed himself "required to rule as a matter of law that Mr. Lord was a licensee * * * and that there is no evidence of negligence which would warrant this case going to the jury * * *." The appeal ** challenges this ruling.

Lencshire House, Ltd. owns an apartment house located at 3140 Wisconsin Avenue, N. W. in the District of Columbia. The building faces east on Wisconsin Avenue and contains about 150 apartment units. For some eight years, under a written lease apartment 317 had been occupied as a private dwelling by Mr. and Mrs. Lord. In the basement of the building was a garage with space for some 25 cars. Whether rental of garage space was available generally or was limited to tenants of the building did not appear in evidence. Mr. Lord was not a garage tenant, paid no garage fee and was not entitled to store his car in the garage. He parked his car wherever he could find space in neighboring streets.

On the afternoon of January 9, 1956, it was raining and sleeting. About 5 P.M., Mr. Lord arrived on 38th Street parallel to and one block west of Wisconsin Avenue and parked his car there. The whole area was covered with ice and snow. Mr. Lord walked east on Woodley Road until he came to a public alley behind the apartment building. He turned into the alley, for otherwise "I would have had to walk a half a block up Woodley Road to get into the entrance at Wisconsin, so I made the cut through the rear exit, which would have saved a half a block." There was a pedestrian entrance from the alley to the basement. It had three steps, a small porch and handrails either side of the steps and enclosing the landing or porch outside the pedestrians' doorway. Mr. Lord did not use that doorway.

Adjacent to the pedestrian entrance were three large roll-up doors located at the top of a ramp. One of these doors leading to the garage was open. From the alley level into the garage, Mr. Lord walked up a "fairly steep"—perhaps 20% grade—concrete ramp, some nine feet in width. The ramp had been scored by lines four inches apart to afford traction and had been sanded by the janitor. Various witnesses testified that the landlord knew that pedestrians frequently— some continuously—used the garage entrance. No sign or other notice from the landlord prohibited such use.

The next morning Mr. Lord tried to look out his window to observe the weather, but the panes were dimmed by vapor. He noticed raindrops on the glass. About 8 A.M. when leaving for the office, he wished to avoid walking out the front entrance and the half block walk west on Woodley Road. "I wanted to keep from getting wet * * *." He descended to the garage. He would have had to go some 20 to 30 feet beyond the open garage door to reach the pedestrian doorway where the outside steps had handrails. He "chose" to go to the garage exit where there were no handrails.

He did not observe conditions in the streets that morning, but assumed they were the same as on the previous evening. He did not look at the ramp to observe its condition. He was "interested in the weather conditions in trying to keep from getting wet." Since it was "drizzling rain," he pulled up his coat about his neck, he testified. "I took two steps out and fell, slipped."

A lady seated in her car nearby saw him fall on the ramp, "just as he went out of the garage door." She had come out the same doorway a few minutes earlier, and had "picked" her steps over the slippery surface. "There was sand there but it had frozen over. It rained and sleeted the night before and it froze over," she explained. She assisted Mr. Lord up the ramp and into the garage. She came out again, got into her car, drove to the Wisconsin Avenue entrance

** Hereinafter we speak only of Mr. Lord's case. We do not reach the landlord's cross-appeal from the denial of its motion for summary judgment predicated upon an exculpatory clause in the lease agreement.

to the building, found the janitor in front cleaning off the sidewalk and told him what had happened.

Mr. Lord rested his case. We of the majority conclude that the District Judge correctly discerned the pattern of our law which over the years has been developed and applied in this jurisdiction.

■ To withstand a motion for directed verdict in a negligence action, a plaintiff by evidence upon which a jury may *properly* predicate a verdict must establish both negligence and the injury alleged. If the "evidence fails adequately to support either element the motion should be granted." [1] Here the injury was clearly established.

As to the element of negligence, "before the owner of the premises can be held liable, there must be a failure on his part to perform a duty which the law imposes. Unless there is such failure, obviously there can be no recovery * * *." [2]

■ The owner of an apartment house retaining exclusive control of its common approaches is, after notice, bound to exercise ordinary care so that persons *lawfully* using them may be safeguarded against conditions, whether permanent or temporary, which make them dangerous to the tenants or their guests.[3] It is immaterial that the particular condition giving rise to possible danger is the result of a natural accumulation of snow or ice.[4] We held, however, that a verdict should have been directed for the landlord where the plaintiff, a tenant, fell on a common approach to an apartment building when the evidence failed to establish that the landlord had a reasonable opportunity to discover the icy conditions or a reasonable opportunity after notice to correct them.[5]

■ The injured plaintiff in the Pessagno case was a guest of a tenant. In the Simpson case, she was a tenant. Both fell on ice which had formed on common approaches to the apartment building. Both were clearly in the position of invitees so that no issue arose as to the plaintiff's status. Here the problem is directly posed. Whether Mr. Lord at the time and place of his fall was an invitee or a licensee is critical.[6]

■ Where the evidence is conflicting, such a determination is to be made by the jury.[7] On the other hand, where "facts essential to the determination of * * * status are not in dispute," whether Mr. Lord was a licensee or an invitee presents "a legal question for the court." [8]

1. Shewmaker v. Capital Transit Co., 1944, 79 U.S.App.D.C. 102, 103, 143 F.2d 142, 143.

2. Harrison v. Mortgage Inv. Co., 1932, 61 App.D.C. 155, 156, 58 F.2d 881, 882; Bowles v. Mahoney, 1952, 91 U.S.App.D.C. 155, 202 F.2d 320, certiorari denied, 1953, 344 U.S. 935, 73 S.Ct. 505, 97 L. Ed. 719.

3. Wardman v. Hanlon, 1922, 52 App.D.C. 14, 280 F. 988, 26 A.L.R. 1249.

4. Pessagno v. Euclid Inv. Co., 1940, 72 App.D.C. 141, 143, 112 F.2d 577, 579; Reardon v. Shimelman, 1925, 102 Conn. 383, 128 A. 705, 39 A.L.R. 287.

5. C. W. Simpson Co. v. Langley, 1942, 76 U.S.App.D.C. 365, 366, 131 F.2d 869, 870. We there distinguished the Pessagno case, supra note 4, where notice of the dangerous condition "being conceded," we said: "We merely held that [the landlord] owed a duty to those persons lawfully using [the approaches] to exercise ordinary care, after notice or reasonable opportunity for notice, to keep them free from * * * conditions of danger."

6. In situations where a defect is latent but is known to the landlord who fails to warn or otherwise guard against harm and the injured party cannot reasonably be expected to appreciate the existence of or to discover the hidden danger, whether he be an invitee or a licensee is immaterial. Gleason v. Academy of the Holy Cross, 1948, 83 U.S.App.D.C. 253, 254, 168 F.2d 561, 562; and see Restatement, Torts § 342 (1934).

7. Young Men's Shop v. Odend'Hal, 1941, 73 App.D.C. 354, 357, 121 F.2d 857, 860.

8. Arthur v. Standard Engineering Co., 1951, 89 U.S.App.D.C. 399, 402, 193 F. 2d 903, 906, 32 A.L.R.2d 408, certiorari denied, 1952, 343 U.S. 964, 72 S.Ct. 1057, 96 L.Ed. 1361.

█ We have adopted the "mutual benefit" test as determinative of the issue.[9] Where the privilege of user exists for the common interest or mutual advantage of the tenant and the landlord, the courts have found a case of invitation. If that privilege exists for the mere convenience or benefit of the party relying upon and using it, we see a case of license.[10]

█ Here we have no dispute as to the facts, and the evidence is overwhelming that Mr. Lord chose his path for his own interest and convenience. He was a licensee. True, he was not forbidden to use the garage entrance. But mere permission to use, often exercised, did not enlarge his license [11] or transform his status. Not only did such use confer no benefit upon the landlord, so as to make it an invitor,[12] it might have created a detriment.

On the other hand, pedestrian common approaches to the apartments were provided. At the rear, we find an entrance with flat steps guarded by handrails, as contrasted with the steep automobile ramp, scored and sanded for automobile traction. At the front was a main entrance where the janitor was clearing the way at the very time of Mr. Lord's fall.

In sum, it was shown on this record that Mr. Lord was a licensee. He chose his own course as a matter of his personal convenience. Thus he took upon himself the risk of unconcealed dangers, natural to a situation obvious at the time. It was not shown that the landlord failed in any duty owed to Mr. Lord, and under the circumstances the trial judge correctly concluded that Mr. Lord had failed to establish an element essential to his recovery. There is no error, and the judgment entered on the verdict in No. 14886 is

Affirmed.

No. 14888 dismissed.

Mr. Justice BURTON dissents on the ground that there is sufficient evidence in the record to have required the submission to the jury of the question whether or not, under the long-standing practices of the landlord and tenants, the exit used by appellant was one authorized for the use of tenants, at their option, equally with the nearby but less convenient exit having steps and handrails. If found to be so, the issue of negligence would then be determined by the jury under the standard applicable to an invitee rather than to a licensee.

9. Ibid.

10. Halin v. United Mine Workers, 1956, 97 U.S.App.D.C. 210, 212, 229 F.2d 784, 786. Restatement, Torts § 332 (1934) recognizes a status of "business visitor." Sections 330 and 331 identify classifications denominated "licensee" and "gratuitous licensee." This court has previously outlined further refinements by terminology to be noted in Firfer v. United States, 1953, 93 U.S.App.D.C. 216, 219, 208 F.2d 524, 527 and Martin v.

United States, 1955, 96 U.S.App.D.C. 294, 225 F.2d 945.

11. Branan v. Wimsatt, 54 App.D.C. 374, 298 F. 833, certiorari denied, 1924, 265 U.S. 591, 44 S.Ct. 639, 68 L.Ed. 1195; Arthur v. Standard Engineering Co., supra note 8.

12. The duty owed by an invitor as distinguished from that owed by a licensor is defined in Arthur v. Standard Engineering Co., supra note 8, 89 U.S.App.D.C. 401, 193 F.2d 905.