John C. WILLIS, E. Hillman Willis, and Richard T. Willis, t/a E. M. Willis & Sons, Appellants,

v.

Louise STEWART and James Stewart, Appellees.

No. 3200.

District of Columbia Court of Appeals.

Argued April 8, 1963.

Decided May 17, 1963.

William T. Clague, Washington, D. C., with whom Francis C. O'Brien and Allan C. Swingle, Washington, D. C., were on the brief, for appellants.

John Joseph Leahy, Washington, D. C., for appellees.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

QUINN, Associate Judge.

Appellees, husband and wife, brought suit for personal injuries sustained by the wife, for attendant expenses, and for loss of consortium suffered by the husband. The jury returned a verdict in their favor. The trial judge, in a carefully considered opinion, denied appellants' motions for a new trial and for judgment *non obstante veredicto* on the ground that the complaint stated a cause of action which, under all the testimony, was properly submitted to the jury. This appeal followed.

Appellees have lived in an apartment building owned by appellants for twenty-three years. The husband has been employed by appellants as a janitor for this building, and has paid no rent for his apartment. The wife, although not employed by appellants, has assisted her husband in performing various janitorial services throughout the entire period; these included showing apartments to prospective tenants, general cleaning, and removing trash.

On the morning in question, the wife was carrying wet cartons from the street-floor hall to the incinerator in the boiler room. To reach the incinerator she first had to pass through a meter room. This room was locked and a sign on the door informed all tenants to keep out. It is disputed whether she obtained her key from appellants or from her husband. Crossing the meter room and passing through the boiler room doorway, she came to four concrete steps which led to the boiler room floor. A shallow puddle, about eighteen inches in length, lay at the foot of these steps. She descended the steps and attempted to cross over the puddle but fell when her left foot touched and slipped on some substance in the water.

Testimony was introduced to show that the halls and basement were flooded after a heavy rain. This was allegedly caused by a faulty drain outside the building and the absence of a sill or any type of weather stripping on the door closest to the drain. Appellees stated that water accumulated in the area where the wife slipped because of a depression in the boiler room floor adjacent to the steps. They said that the bottom step leading to the boiler room was chipped. It was uncontroverted that the basement was flooded several times a year and that there had been a heavy rain the previous evening.

The wife testified that she had frequently delivered messages to the men in the carpentry and paint shop adjoining the boiler room. She was familiar, therefore, with the contours of the boiler room floor. She knew the condition of the steps, knew the depression existed, knew that water collected in the depression after a heavy rain, and knew that the last step was chipped. However, she denied slipping on the chipped portion of the step or knowing there

was any silt or mud in the puddle. Moreover, she denied encountering any silt or mud during past floodings.

One of the appellants testified that he was aware of the wife's work and the conditions in the building when flooding occurred. He stated that he had reported her injury to the Workmen's Compensation Commission.

Appellants' first contention is that at the time of the accident the wife was a trespasser or at most a bare licensee, since she entered the boiler room without permission or consent.[1] Furthermore, they argue that even if the wife could be considered a tenant of the building, her passage beyond the meter room's "keep out" sign similarly classified her as a trespasser or a bare licensee. As such she took upon herself the risk of unconcealed dangers obvious at the time of the accident. Appellees, on the other hand, contend that the wife was an invitee.

In this jurisdiction, the mutual benefit test is determinative of her status. Lord v. Lencshire House, Ltd., 106 U.S. App.D.C. 328, 332, 272 F.2d 557, 561 (1959); Arthur v. Standard Engineering Co., 89 U.S.App.D.C. 399, 402, 193 F.2d 903, 906, 32 A.L.R.2d 408 (1951), cert. denied, 343 U.S. 964, 72 S.Ct. 1057, 96 L.Ed. 1361 (1952). Where the privilege of user exists for the common interest or mutual advantage of the user and the owner, the courts have found a case of invitation. If that privilege exists for the mere convenience or benefit of the party relying upon and using it, there is a case of license. Lord v. Lencshire House, Ltd., supra. Where the evidence is conflicting, such a determination is to be made by the jury. Young Men's Shop v. Odend'Hal, 73 App. D.C. 354, 357, 121 F.2d 857, 860 (1941).

Here there was a dispute as to the facts. Appellants claim that the wife's entry into the meter and boiler rooms was unauthorized and unsolicited. They deny entrusting her with a key to the meter room. Contrarily, appellees claim that the wife performed beneficial services for appellants throughout her entire residence in the building. They state that appellants had knowledge of her work, and cannot deny the benefits previously received in order to avoid the burdens which the wife's invitee status would now impose. Several tenants corroborated appellees' testimony concerning the wife's services for appellants. Of particular significance were appellants' own statements that they were familiar with the wife's work and that they had reported her injury to the Workmen's Compensation Commission.

We cannot say that there was no evidence tending to show appellants derived any benefit from the wife's activities. Arthur v. Standard Engineering Co., supra, 89 U.S.App.D.C. at 403, 193 F.2d at 907. Nor can we say that the evidence was overwhelming that the wife chose her path for her own interest and convenience without conferring any benefit upon appellants. Lord v. Lencshire House, Ltd., supra. Rather, we think reasonable men, considering all the evidence, could disagree about the relationship which existed between the wife and appellants. We hold that the question of the wife's status was properly one for the jury.

An invitor owes a duty to a prospective invitee to furnish him with reasonably safe premises, Arthur v. Standard Engineering Co., supra, 89 U.S.App.D.C. at 401, 193 F.2d at 905, and to discover dangerous conditions.[2] Since appellants had knowledge of the condition of the premises after a heavy rain, the jury could have concluded that their toleration of this condition was negligent and the proximate cause of the wife's injury. Appellants contend, however, that they are relieved from liability because the wife was either contrib-

1. See Firfer v. United States, 93 U.S.App. D.C. 216, 219, 208 F.2d 524, 527–28 (1953).

2. 2 Harper and James, The Law of Torts § 27.12 (1956).

utorily negligent as a matter of law or because she assumed the risk of possible harm.

■ We have recently noted that contributory negligence and assumption of risk are distinguishable. Harris v. Plummer, D.C.App., 190 A.2d 98 (1963). Contributory negligence depends entirely upon conduct while assumption of risk involves a mental state of willingness. Casper v. Barber & Ross Company, 109 U.S.App.D.C. 395, 400, 288 F.2d 379, 384 (1961); Weber v. Eaton, 82 U.S.App.D.C. 66, 67–68, 160 F.2d 577, 578–579 (1947); Harris v. Plummer, supra

■ Considering the defense of contributory negligence first, appellants contend that it must have been obvious to the wife from years of experience that rainwater washing in from the backyard to the boiler room floor would contain dirt or suspended matter. But appellants equate obviousness with a lack of due care. It was not necessarily negligent for the wife knowingly and deliberately to encounter a danger which it was negligent for appellants to maintain. The decisive question was whether her conduct was reasonable under all the circumstances.[3] In this regard we find Mosheuvel v. District of Columbia, 191 U.S. 247, 24 S.Ct. 57, 48 L.Ed. 170 (1903), in point. In that case, plaintiff, in descending to the street from an abutting building, was injured when she attempted to step over an uncovered water box in the sidewalk at the base of three steps. She had used this path many times, and knew there were ways to walk around the water box on either side. In reversing our Circuit Court of Appeals, which had affirmed a directed verdict for defendant, the Supreme Court stated the question as follows:

"* * * Was the situation of the water box and the hazard to result from an attempt to step over it so great

that the plaintiff, with the knowledge of the situation, could not, as a reasonably prudent person, have elected to step across the box, instead of stepping to the sidewalk from either side of the tread of the last step? And this, we think, was, under the undisputed proof, a question for the jury, and not for the court." (191 U.S. at 266, 24 S.Ct. at 63.)

Applying this principle to the case at bar, the question becomes: Was the danger of slipping on some substance in the water such a probable one that an ordinarily prudent person, exercising reasonable care, could not have attempted to step across the puddle? We feel that reasonable minds could differ in their answers to this question. Indeed, the jury concluded that the wife was not contributorily negligent for it returned a verdict in her favor. On the basis of the evidence in this case we hold that the wife's conduct was not carelessness as a matter of law.

■ To establish assumption of the risk, appellants rely on Dougherty v. Chas. H. Tompkins Co., 99 U.S.App.D.C. 348, 349–50, 240 F.2d 34, 35–36 (1957), wherein the court stated:

"The elements which must be shown to give rise to the defense of assumption of risk are often stated to be, first, knowledge of the danger and second, a voluntary exposure to that known danger. To call this defense into play requires a showing that the person charged has no duty to protect the other from the risk. Thus a landowner is not obliged to maintain safe premises for licensees or invitees since they assume the risk upon being informed or having notice of a dangerous condition. * * *" (Footnotes omitted.)

But actual comprehension implies more than knowledge of the defect that constitutes the danger. It also includes an ap-

3. See Williamson v. Derry Electric Co., 89 N.H. 216, 218, 196 A. 265, 267 (1938);

2 Harper and James, The Law of Torts § 27.13 (1956).

preciation and an understanding of the dangers that lurk in the defect and result in the injury, and it is usually a jury question, Zurich General Accident & Liability Ins. Co. v. Childs Co., 253 N.Y. 324, 171 N.E. 391 (1930), whether there was such an appreciation in fact.[4] While it is undeniable that the puddle was open and obvious to the wife, it is not undeniable that the slippery or dangerous condition of the floor was open and obvious to her. The wife continually disclaimed any knowledge of the type of substance on which she slipped. An instruction on assumption of the risk was granted and considered by the jury. We hold that the question was properly before them.

Affirmed.

---

4. James, Assumption of Risk, 61 Yale L.J. 141, 147 (1952). The quoted language in Dougherty was based largely upon this same article.