Edward V. KNAPP and Evelyn Mae Knapp, Appellants,

v.

WABASH RAILROAD COMPANY, a Corporation, and Atchison, Topeka & Santa Fe Railway Company, a Corporation, Appellees.

No. 18564.

United States Court of Appeals Eighth Circuit.

April 10, 1967.

984

Burton H. Shostak, of Hoffman & Shostak, St. Louis, Mo., for appellants. Leo M. Newman, of Goldenhersh, Fredericks & Newman, St. Louis, Mo., was with him on the brief.

Albert E. Schoenbeck, St. Louis, Mo., for appellee Wabash R. Co.

Alan C. Kohn, of Coburn, Croft & Kohn St. Louis, Mo., for appellee Atchison, T. & S. F. R. Co.

Before MATTHES, LAY and HEANEY, Circuit Judges.

MATTHES, Circuit Judge.

Appellants' causes of action were dismissed upon motion of appellees for a directed verdict at the conclusion of the opening statement of appellants' counsel.[1]

In Best v. District of Columbia, 291 U.S. 411, 54 S.Ct. 487, 78 L.Ed. 882 (1934), the Supreme Court considered the propriety of granting a motion for a directed verdict upon the opening statement of plaintiff's counsel. Chief Justice Hughes pertinently observed:

> "There is no question as to the power of the trial court to direct a verdict for the defendant upon the opening statement of plaintiff's counsel where that statement establishes that the plaintiff has no right to recover. The power of the court to act upon facts conceded by counsel is as plain as its power to act upon evidence produced. * * * To warrant the court in directing a verdict for defendant upon that statement, it is not enough that the statement be lacking in definiteness but it must clearly appear, after resolving all doubts in plaintiff's favor, that no cause of action exists." 291 U.S. at 415–416, 54 S.Ct. at 489.

We have similarly sanctioned this procedure under appropriate circumstances. See Illinois Power & Light Corp. v. Hurley, 49 F.2d 681, 684 (8th Cir. 1931), cert. denied, 284 U.S. 637, 52 S.Ct. 19, 76 L.Ed. 541 (1931); Spies v. Union Pac. R. Co., 250 F. 434, 435 (8th Cir. 1918); cf. Stuthman v. United States, 67 F.2d 521, 523 (8th Cir. 1933). Disposition of an action by a directed verdict at the close of plaintiff's opening statement has also been recognized in other jurisdictions. See, e. g., Tuck v. Chesapeake and Ohio Railway Company, 251 F.2d 180, 181–182 (4th Cir. 1958); Halin v. United Mine Workers of America, 97 U.S.App. D.C. 210, 229 F.2d 784, 787 (1956); Firfer v. United States, 93 U.S.App.D.C. 216,

---

1. Edward V. Knapp and his wife, Evelyn Mae Knapp, each filed separate actions in the Circuit Court of the City of St. Louis for damages for injuries sustained and loss of companionship and consortium, respectively. Both actions were removed to the federal district court on grounds of diversity of citizenship and were thereafter consolidated.

208 F.2d 524, 526–527 (1953); cf. Miller v. Stinnett, 257 F.2d 910 (10th Cir. 1958); Ackerholt v. National Savings & Trust Co., 100 U.S.App.D.C. 312, 244 F. 2d 760 (1956); Cioffi v. Queenstown Apartments, Section E, Inc., 100 U.S. App.D.C. 227, 243 F.2d 650 (1957); Busam Motor Sales v. Ford Motor Co., 203 F.2d 469 (6th Cir. 1953).

Although the procedure has been approved, its application has been narrowly limited:

> "The Judge's power to dismiss upon the plaintiff's opening statement should be exercised sparingly and only where an absolute defense is disclosed beyond doubt. * * * The opening statement is not the time to point out all the niceties of the testimony which is to come, and ordinarily, even a palpably weak case should be permitted to proceed." Tuck v. Chesapeake and Ohio Railway Company, supra, 251 F. 2d at 181.

From the foregoing authorities it is readily apparent that a district court is warranted in granting a defendant's motion for a directed verdict only if the plaintiff's opening statement embraces all the operative facts which he expected to prove at the trial, and such facts under any legal theory are insufficient to sustain a cause of action.

Appellants do not contend on appeal that they would be able to establish facts in addition to those encompassed in their opening statement. To the contrary, they have stipulated in this court that:

> "The opening statement of plaintiffs and the facts herein stipulated constitute a full affirmative statement of all facts beneficial to plaintiffs on the question of liability in this case."

Additionally, counsel for appellants suggested in oral argument that we review the sufficiency of the evidence as though the motions for a directed verdict had been granted at the close of the appellants' case.

We find on the record before us no basis whatever for condemning the timeliness of the court's action. It is manifest that appellants were not opposed to the court evaluating the sufficiency of the evidence to establish a submissible case on the basis of the opening statement and ruling on the motions for directed verdict at this stage of the proceeding.[2]

The real question for our determination therefore is whether, assuming the opening statement constitutes all the evidence in the case, appellants have nonetheless failed to establish a claim upon which relief can be granted.

The evidence disclosed that appellant Edward V. Knapp was employed by the Ford Motor Company as an "unloader piler" on April 20, 1960, the date of the accident. On April 16, 1960 appellee Wabash Railroad, through normal operations, transported a box car, owned by appellee Santa Fe, to a Ford Motor Company warehouse located in Hazlewood, Missouri.

On April 20th Edward DeGrandy, another Ford employee and Knapp's supervisor, broke the seal on the box car, and with the help of Knapp began unloading its contents. The doubledeck box car had four compartments, two on each side of the center door. The contents at each level were held in position by a picket fence approximately four feet high. Each picket fence was held in place by dunnage rods which extended across the fence and hooked into the side of the box car.

Nothing eventful happened during the unloading of the bottom compartments on the morning of April 20th. During the afternoon, however, while Knapp was removing one of the dunnage rods on the second deck, the load shifted and pushed him off the deck. He fell on one of the fences and sustained serious injuries.

---

2. We were advised during oral argument that it was agreed during a pre-trial conference that appellants' counsel would make an exhaustive opening statement, and that if the court at that juncture viewed the evidence as insufficient, appellants would not oppose dismissal of the action.

■ Appellants' pleaded theory was that both appellees were prima facie negligent under the res ipsa loquitur doctrine. All parties agree that the substantive law of Missouri controls. The leading Missouri case of McCloskey v. Koplar, 329 Mo. 527, 46 S.W.2d 557, 92 A.L.R. 641 (1932) sets forth the essential guidelines for a submissible res ipsa loquitur case:

1. The occurrence resulting in injury was such as does not ordinarily happen if those in charge use due care.

2. The instrumentality causing the injury was under the management and control of the defendant or the defendant had the right of control at the time of the injury.

3. The defendant possessed superior knowledge or means of information as to the cause of the occurrence.

The Missouri Courts have consistently adhered to the principles of McCloskey, supra. See, e. g., Walsh v. Phillips, 399 S.W.2d 123, 126 (Mo.Sup.1966); Parlow v. Dan Drayage Co., 391 S.W.2d 315, 323 (Mo.Sup.1965); Young v. Missouri Public Service Co., 374 S.W.2d 59, 62 (Mo. Sup.1964); Phillips v. Carroll, 379 S.W. 2d 143, 145 (Mo.Ct.App.1964).

The district court, Honorable John K. Regan presiding, held that appellants' evidence demonstrated a fatal defect in that the instrumentality involved was not under the management and control of either appellee at the time of the casualty, and further that neither appellee had superior knowledge of or means of information as to the cause of the occurrence.

■ We agree and affirm. A careful analysis of appellants' opening statement reveals the absence of even a scintilla of evidence to support the inference that either of the appellees had the management or control of, or the right to control, the box car and its contents at the time Knapp was injured. Quite to the contrary, the car had been in the ex-

clusive control of the consignee, Ford Motor Company, for four days, and the seal on the car had been broken by a Ford employee. The unloading operation was performed entirely by Knapp and his co-worker. Appellees' only connection with the casualty was the fact that the cargo had been shipped in a Santa Fe car and delivered to the Ford plant by Wabash. Santa Fe's ownership of the car is insufficient in and of itself to establish liability under the res ipsa loquitur doctrine. Cf. Sykes v. St. Louis & S. F. R. Co., 178 Mo. 693, 77 S.W. 723, 728 (1903); Doering v. St. Louis & O'Fallon Ry. Co., 63 S.W.2d 450, 452 (Mo.Ct.App. 1933). Moreover, Wabash, the delivering carrier, cannot be held responsible under that doctrine since it had parted with control of the instrumentality four days prior to the accident. Cf. Fisher v. Minneapolis & St. L. Ry. Co., 199 F.2d 308 (8th Cir. 1952).

■ The record is also barren of any evidence to establish the third element of the res ipsa loquitur doctrine. There is no showing that either of the appellees possessed superior, or for that matter, any knowledge or means of information as to the cause of the occurrence. There is no claim that either participated in the loading of the car.[3] The undisputed fact is that a portion of the shipment had been unloaded by Knapp and his co-employee without incident. They "ought to know as much about what caused the injury as anyone else; they were there, and the car was under the control and management of their employer * * *" at the time of the injury. Chicago, R. I. & P. R. Co. v. McClanahan, 173 F.2d 833, 838 (5th Cir. 1949).

■ Appellants originally predicated liability upon the res ipsa loquitur doctrine. Alternatively, however, they contend that their evidence was sufficient to make a submissible case under a theory of general negligence. This theory is closely akin to the res ipsa loquitur doctrine, for if the plaintiff

---

3. We were advised in oral argument that Ford Motor Company was also the consignor of the shipment and that the car had been loaded by a cartage company at the point of origin.

pleads and proves that the defendant had exclusive possession or control of the instrumentality which caused the injury *at the time the negligent act was committed,* and can also establish the absence of negligence in handling the instrumentality after it has left the possession of defendant, he has made a prima facie case. Maybach v. Falstaff Brewing Corporation, 359 Mo. 446, 222 S.W.2d 87 (1949), (bottle explosion case).[4] See also Stephens v. Coca-Cola Bottling Co. of St. Louis, 232 S.W.2d 181 (Mo.Ct.App.1950).

Prior to *Maybach,* supra, the Missouri courts had held the res ipsa loquitur doctrine applicable to cases where the instrumentality was in the control of the defendant at the time the negligent act was committed, and where the evidence showed the absence of any proximate cause intervening between the time of the negligent act and plaintiff's injury. See, e. g., Stolle v. Anheuser-Busch, Inc., 307 Mo. 520, 271 S.W. 497, 39 A.L.R. 1001 (1925); Counts v. Coca-Cola Bottling Co. of St. Louis, 149 S.W.2d 418 (Mo.Ct.App. 1941). In *Maybach* the Supreme Court retreated from its former position, and held that the opinion in *Stolle* "extends the res ipsa loquitur doctrine too far and farther than we have been willing to extend it in other cases." 222 S.W.2d at 90. Under the *Maybach* case a plaintiff, unable to fulfill all of the requirements of the res ipsa loquitur doctrine, may still be able to establish the defendant's negligence by circumstantial evidence under a theory of general negligence.

The general negligence theory has been applied to other factual situations. See, e. g., Phillips v. Carroll, (tire explosion), supra; Hasemeier v. Smith, (malpractice), 361 S.W.2d 697 (Mo.Sup.1962); Kornberg v. Getz Exterminating Company, Inc., (insecticide), 341 S.W.2d 819 (Mo.Sup.1961).

In an effort to demonstrate the applicability of the general negligence theory, appellants submit that the appellees purportedly put into operation a car structurally suited to carry the load, that when Knapp handled the load it shifted, precipitating him against the picket fence. On this premise appellants assert that the shifting and falling of the load "was the proximate result of the negligence of appellees in not furnishing a car in which the freight would not fall."

In Missouri, a delivering or terminal rail carrier, prior to the time it surrenders control of the car to the consignee, must exercise due care to determine whether the car is reasonably safe for unloading by the consignee's employees. If the car is found to be in a defective condition, then it becomes the duty of the carrier to make the necessary repairs or to warn the consignee of the unsafe condition. Wabash Railroad Company v. Hartog, 257 F.2d 401, 405–406 (8th Cir. 1958); Markley v. Kansas City Southern Ry. Co., 338 Mo. 436, 90 S.W.2d 409, 411 (1936); Doering v. St. Louis & O'Fallon Ry. Co., supra; Ward v. Kurn, 165 S.W.2d 290, 293 (Mo.Ct.App.1942).

Appellants' position, although sound in theory, must be rejected for lack of proof. The record fails to disclose any evidence which would warrant a finding that Santa Fe put into service a car which was in any manner defective or unsafe for shipping operations. Cf. Chicago, Rock Island & Pacific Railroad Co. v. Williams, 245 F.2d 397 (8th Cir. 1957), cert. denied, 355 U.S. 855, 78 S.Ct. 83, 2 L.Ed.2d 63 (1957). In addition, there are no circumstances which would support the inference that appellee Wabash delivered the car to Ford in such condition that its employees could not safely enter the car for the purpose of unloading it. The converse is true. Ford's employee, DeGrandy, broke the seal and opened the door without mishap, and both he and Knapp entered the car and engaged in the unloading. The evidence conclusively refutes the notion that

4. In *Maybach* plaintiff was injured by the explosion of two beer bottles which were in the possession of a . Kroger store. There was evidence to prove that there was no negligence in the handling of the bottles after Falstaff parted with control.

what transpired during the unloading operation was caused by a defective or unsafe car. We do not know what set in motion the event which resulted in Knapp's injury. Perhaps it was improper unloading. If so, appellees are not responsible inasmuch as there is no claim or indication that they were instrumental in placing the shipment in the car. Perhaps it was the result of the negligence of Knapp and his co-employee. In any event, the record is totally barren of any evidence tending to establish any negligence on the part of either of the appellees.

On this record appellants have not made a submissible case against appellees under the res ipsa loquitur doctrine, a theory of general negligence, or on any other legal basis.

Affirmed.